176 So.2d 827 (1965)
Mrs. Rosalea Hart HENDRICKS, Plaintiff-Appellee,
v.
AMERICAN EMPLOYERS INSURANCE COMPANY, Defendant-Appellant.
No. 10398.
Court of Appeal of Louisiana, Second Circuit.
June 16, 1965.
Rehearing Denied July 29, 1965.
*828 Theus, Grisham, Davis, Leigh & Brown, Monroe, for appellant.
McHenry, Snellings, Breard, Sartor & Shafto, Monroe, for appellee.
Before HARDY, AYRES and BOLIN, JJ.
BOLIN, Judge.
Mrs. Hendricks instituted this action to recover for the death of her husband under a policy of insurance issued by defendant company. The cause was submitted to the lower court on a joint stipulation, the depositions of two witnesses and various exhibits, including the policy sued upon, and judgment was rendered in favor of plaintiff from which defendant appeals.
The appellant in brief has agreed with the statement of the trial judge that there is no *829 dispute as to the basic facts although there is disagreement between the parties as to whether the circumstances by which the insured met his death qualify and entitle the plaintiff to death benefits provided by the policy.
The joint stipulation of facts signed by the parties reflects that on the date of the accident plaintiff's deceased husband, Wilfred E. Hendricks, was employed as assistant manager for Panola Company, Ltd., which owned a number of large farms in the operation of which numerous people were employed. In addition to his monthly salary of $400 and as part of his compensation Hendricks was furnished a pickup truck for his use on the farm. Mr. Hendricks not only used the truck in his work but kept it at his home, had complete control over it, using it for his personal pleasure and business as well as going back and forth to his work, in going over the crops in the fields, over the pastures and in performing any of the duties incumbent upon a plantation manager.
The deposition of Mr. Guthrie, general manager of Panola, reflects that Mr. Hendricks never used this truck to haul products or produce of Panola for sale to customers, although Panola did have other trucks used for transporting farm products to market.
On October 3, 1963, Hendricks drove the aforementioned truck to a field of his employer for the purpose of supervising and assisting with the burning of grass from said field. He was accompanied and assisted by Joe Porter, the one witness to this accident. Shortly after the fire was started it spread rapidly and engulfed the truck.
From the deposition of Joe Porter, it appears that when Mr. Hendricks and Porter noticed the fire spreading toward the truck, which had been left parked nearby in a ditch traversing the field, they rushed to the vehicle and attempted to move it. Decedent entered the truck, started the motor, engaged the gears and discovered that it was stuck, the front end being down in the ditch causing the left rear wheel to be suspended and incapable of traction. Joe Porter tried to assist in moving the truck by pushing or shoving but their combined efforts were unsuccessful and they were forced to retreat while the fire engulfed the vehicle, passed over and left portions of the pickup and the contents smoldering and aflame, including an open bucket of diesel fuel, which was in the middle of the truck about a foot from the tail gate. Porter testified the tail gate was up or closed at the time.
Mr. Hendricks and his helper returned to the truck and together removed two tarpaulins from the back thereof. The decedent then reached into the vehicle, retrieved a jack handle and while standing on the ground against, or almost against the truck, sought to remove the burning container of fuel from the body of the pickup by inserting the jack handle into the bail of the bucket. While attempting to retrieve the container of fuel it was necessary for Hendricks to reach over the closed tail gate and to lean over the truck bed because of its raised position due to the front end being in a ditch. A portion of his body was therefore directly above the truck when he raised the bucket. The burning fuel slid down the angle of the short jack handle and inflicted the fatal burns, from which he died some three days later.
At the time of the accident Mr. Hendricks was the owner of a "Family Automobile Combination Policy" issued by American Employers Insurance Company, defendant herein, which policy was in force and covered his private automobile. In addition to other coverages the policy contained an endorsement entitled "Automobile Death and Specific Disability Benefits" whereby the insurer agreed to pay the sum of $10,000 to the spouse of the insured in the event of death of the insured resulting directly and independently of all other causes from bodily injury caused by accident, and sustained by the insured "while in or upon or while entering into or alighting from, or from *830 being struck by an automobile * * *" The endorsement contained the following exclusion:
"This insurance does not apply:
(a) to bodily injury or death sustained in the course of his occupation by any person while engaged (1) in duties incident to the operation, loading or unloading of, or as an assistant on, a public or livery conveyance or commercial automobiles, or (2) in duties incident to the repair or servicing of automobiles; * * *" (Emphasis added.)
Appellant urges that the lower court erred in finding that the deceased was upon the truck when the flaming fuel oil spilled on him and in further finding the truck was not a commercial automobile.
Thus it is apparent the issues presently before this court are the correctness of the lower court's interpretation of two phrases: (1) while * * * upon * * * and (2) commercial automobiles, neither of which are defined in the policy.
It is conceded by all parties that the appellate courts of this state have never been called upon to define the word "upon" as used in the policy and on only one occasion has the defining of "commercial automobile" been necessary to a decision. Our responsibility therefore is great and in the solution of the problems presented we wish to acknowledge the aid furnished by able counsel for both litigants. Seldom have we had the opportunity of studying a case more thoroughly briefed than this one.
The contract before the court in this case is, of course, not an ordinary business contract, but rather it is one of insurance. While it is true that the law of contracts and conventional obligations is applicable to contracts of insurance in general, there are some vital differences. One such difference is that contracts of insurance are unilaterally prepared in the confection of which the insured has no part. It is for this reason that it has become well-settled law in the field of insurance that words and phrases employed in a contract of insurance are to be construed, interpreted and defined in their ordinary and popular sense, rather than in a technical, philosophical or limited sense; that such words and phrases are to be construed liberally in favor of the policyholder and that all ambiguities are likewise to be resolved in favor of the policyholder. See Louisiana Civil Code Articles 1945 et seq., particularly Article 1957 and cases cited.
Insurers may limit their liability where such limitation is clearly and expressly set forth in the contract of insurance. Such limitations or exclusions, however, must be free of ambiguity and sufficiently understandable to any given insured that it may be said that, in entering into the agreement containing such limitation, he understood and consented to such limitation. If the words or terms used in insurance policies are subject to more than one accepted meaning, then such words must be construed in the sense which is most favorable to the insured, unless such interpretation would lead to absurd results. See Louisiana Civil Code Articles 1957 and 1945(3).
Most insurance policies expressly define words or phrases which may be understood in different senses. Where a policy of insurance contains a definition of any word or phrase, this definition is controlling. Where, however, a particular word or phrase is not defined, the courts will endeavor by means of generally accepted legal techniques to ascertain the common and popular meaning of such word or phrase.
Adhering to the order of argument elected by defendant-appellant in its brief herein, the first item for consideration is the question of whether plaintiff's decedent was "in or upon or * * * entering into or alighting from" the truck in question at *831 the time he sustained the severe burns which resulted in his death.
We have examined all the authorities cited by the parties, including Webster's Dictionary, Words and Phrases, various volumes of A.L.R., Corpus Juris Secundum and cases from this and other states. As previously stated none of the Louisiana cases define "upon" in the disputed phrase. From the other sources we can find numerous meanings attached to both the questioned words and phrases. This does not, however, necessarily render either of the words ambiguous; rather it permits the court to adopt the meaning most favorable to the insured. Louisiana Civil Code Article 1957.
A narrow meaning of the word "upon" would require the decedent to have been resting his weight on top of some portion of the truck, either by standing, sitting, lying, kneeling or in some other such manner. The following cases were cited by the lower court in according the word "upon" a broader meaning: Carter v. Travelers Indemnity Company (La.App., 2 Cir., 1962) 146 So.2d 257; Muse v. Metropolitan Life Insurance Co., 193 La. 605, 192 So. 72, 125 A.L.R. 1075 (1939); Goodwin v. Lumbermens Mutual Casualty Co., 199 Md. 121, 85 A.2d 759 (1952); Madden v. Farm Bureau Mutual Automobile Ins. Co., 82 Ohio App. 111, 79 N.E.2d 586 (1948); Sherman v. New York Cas. Co., 78 R.I. 393, 82 A.2d 839, 39 A.L.R.2d 947 (1951); Lokos v. New Amsterdam Casualty Co., 197 Misc. 40, 93 N.Y.S.2d 825 (1949); Christoffer v. Hartford Acc. & Ind. Co., 123 Cal.App.2d Supp. 979, 267 P.2d 887 (1954); and Henderson v. Hawkeye Security Insurance Company, 252 Iowa 97, 106 N.W.2d 86 (1960).
Our review of the record and of these cases leads us to the conclusion the lower court correctly held that Hendricks, while leaning over the truck seeking to lift the bucket of burning fuel therefrom, was upon the truck in the only way he could have been under the existing circumstances. We do not feel such interpretation leads to an "absurd" conclusion, but is in keeping with the purpose of the coverage.
We come next to the meaning of the word "commercial" as used in the exclusionary clause of the policy. The trial judge observed that the Liability section of the policy contains the following definitions:
"farm automobile" means an automobile of the truck type with a load capacity of fifteen hundred pounds or less not used for business or commercial purposes other than farming;
"use" of an automobile includes the loading and unloading thereof; * * *
An additional definition of farm automobile is found in the rider entitled "Rating Information" attached to the same policy:
"Farm automobile" means an automobile, principally garaged on a farm or ranch, that is not used in going to or from work other than farming or ranching and is not used in any occupation other than farming or ranching."
The policy likewise defines "private automobile" as a four wheel private passenger, station wagon or jeep automobile and a "utility automobile" as an automobile, other than a farm automobile, with a load capacity of fifteen hundred pounds or less of the pickup body, sedan delivery or panel truck type not used for business or commercial purposes.
Thus it appears that the insurance company which issued this policy and rider has defined only three types of automobiles by their use but has referred to two other types in the exclusionary clause, i. e., a public or livery conveyance or commercial automobile. As a result we find at least five categories of automobiles by the terms of the policy itself.
*832 Both parties rely upon the pronouncements of the court in the recent case of Hardee v. Southern Farm Bureau Casualty Insurance Company (La.App., 3 Cir., 1961) 127 So.2d 220, the decision of which turned upon the meaning of "commercial automobile" in a similar exclusionary clause of an insurance policy. There a truck, owned by decedent, was used by him to haul his own pulpwood to some designated spot where the wood was then sold. He did not use the vehicle to haul for hire and hauled nothing on it except his own products. There was no evidence tending to show the use of the truck other than for hauling of pulpwood to market. Under these circumstances the court found the truck was a commercial automobile, and in so holding stated as follows:
"Defendant urges, correctly in our opinion, that `commercial automobile' is not an ambiguous term but has a meaning readily ascertainable in the plain, ordinary, and popular sense of the language used. See Webster's New International Dictionary (2nd Ed., 1960), p. 538, verbo `commercial automobile': `An automobile used exclusively for commercial purposes, esp. in transporting goods', and verbo `Commercial' (Adjective). `1. Of or pert. to commerce; mercantile; hence, variously: occupied with commerce; engaged in trade; * * *.' See also 15 C.J.S. verbo Comercial p. 576, defined: `Mercantile, of the nature of commerce, or pertaining or relating to commerce * * *, and engaged in trade. In a comprehensive sense, occupations and recognized forms of business enterprise which do not necessarily involve trading in merchandise, as well as buying, selling, and exchange in the general sales or traffic of American markets, although, when limited to the purchase and sale or exchange of goods and commodities, it is said to be used in a narrow and restricted sense * * *.'
"The truck upon which the decedent was killed was owned and used by him to transport pulpwood for the purpose of selling it for a profit, and the stipulation does not indicate that it was used for purposes other than the hauling of the decedent's products. In our opinion, this truck is to be considered as a `commercial automobile' in the ordinary and popular meaning of the term, whether the modifying adjective is regarded as used in a narrow sense of pertaining to transactions limited to the purchase and sale or exchange of goods or whether it is regarded as used in the broader sense of referring to enterprises having financial profit as the primary aim. * *" (Emphasis added.)

* * * * * *
The italicized portion of the above holding is relied upon by defendants as standing for the proposition that an automobile owned by a business is a commercial vehicle. We do not conceive this to be necessarily true. Having found that the pulpwood truck was a commercial automobile when considered in the narrow sense of being used to transport goods to be sold or exchanged, any further statements regarding the definition of the term were unnecessary to a decision of the particular case and are therefore dicta.
Commercial has many meanings and in the instant case the lower court construed the provisions in the light most favorable to the insured and adopted the narrower meaning as defined in Webster's New International Dictionary (2nd Ed., 1960). We agree with the trial judge's finding and the rationale upon which it is based and hold that in this policy "commercial automobile" means an automobile used in the transporting of goods for sale or exchange and therefore does not exclude coverage of decedent while unloading the farm truck in the present case.
*833 For the reasons assigned the judgment of the lower court is affirmed at appellant's cost.
Affirmed.
HARDY, Judge (dissenting):
The word "upon" is understood in the sense of a common, ordinary, popular and accepted meaning which does not accord with the technical niceties and fine distinctions relied upon by the majority opinion.
I cannot accept the conclusion that either party to the contract intended and understood the agreement as one which would cover the factual circumstances of this case.
In its recital of facts the opinion notes that decedent was "* * * standing on the ground against, or almost against the truck, * * *"; that it was necessary for decedent "* * * to reach over the closed tailgate and to lean over the truck bed * * *", and that "A portion of his body was therefore directly above the truck * * *." These expressions clearly emphasize my objections to the definition of "upon" as being synonymous with "against", "almost against", "over", and "above".
The interpretation does lead to an absurd result. For example, an individual in another vehicle or in a building in close proximity to the truck might, under conceivable circumstances of fact, be in a position "against or almost against" a burning auto. One suspended from a helicopter might be "over" or "above" the vehicle. To hold in such instances that the word "upon" provided coverage would be only slightly more strained in result than the determination reached in this case.
Similarly, I believe the use of the word "commercial" should not be restricted by definition but should be accepted under clear usage and equally clear intent as applying to vehicles generally used "for business purposes" as distinguished from passenger vehicles.
Some rather recent opinions of this court not referred to in the majority opinion would appear to have some bearing upon, and analogy to, the issue of interpretation involved in the instant case, namely, Floyd v. Pilot Life Ins. Co. (2nd Cir., 1961), 135 So.2d 546; Spears v. Phoenix Ins. Co. (2nd Cir., 1963), 149 So.2d 118, and Tucker v. State Farm Mutual (2nd Cir., 1963), 154 So.2d 226.
For the reasons stated I respectfully but firmly dissent.
Rehearing denied.
Hardy, J., dissents.