371 So.2d 815 (1979)
Mrs. Jenny M. CARNEY
v.
AMERICAN FIRE & INDEMNITY COMPANY.
No. 63678.
Supreme Court of Louisiana.
May 21, 1979.
*816 Frank R. Bolton, Jr., Broussard, Bolton & Halcomb, Alexandria, for plaintiff-applicant.
Eugene J. Sues, Gold, Little, Simon, Weems & Bruser, Alexandria, for defendant-respondent.
BLANCHE, Justice.
This is an action by the plaintiff-relator-beneficiary to recover insurance death benefits under a family combination automobile policy issued by the American Fire & Indemnity Company to Phillip L. Carney.
In lieu of trial of the matter, the facts of the case were stipulated between counsel as follows:
"Mrs. Jenny M. Carney was married to and living with Phillip L. Carney on the date of Phillip L. Carney's death, being March 19, 1977. At the time of the suit she was an individual of the full age of majority and domiciled in Rapides Parish, Louisiana.
"Phillip L. Carney, while married to and living with Jenny M. Carney, was killed on March 19, 1977, at the Texas World Speedway in Bryan, Texas, while driving a Formula F racing vehicle in a racing event sanctioned by the Sports Car Club of America, Inc.
"The race track where the accident occurred was not a public highway or a public road.
"The vehicle which Phillip L. Carney was operating at the time of his death was a Formula F Ford vehicle which was an untitled, unlicensed, 4-wheeled motor vehicle.
"The Formula F Racing vehicle which Phillip L. Carney was operating at the time of his death was not equipped with safety equipment such as a horn, tail and headlights or any other type of turn signal indicators. The racing vehicle was fitted with all safety equipment required by the rules and regulations of the Sports Car Club of America, Inc. for participation in one of its sanctioned racing events. [A photograph of said vehicle was attached thereto and marked as Joint Exhibit No. 1.]
"On March 19, 1977, there was in full force and effect a policy of automobile insurance between American Fire & Indemnity Company and Phillip L. Carney [a copy of which was attached thereto and marked for identification as Joint Exhibit No. 2]. Said policy provides for a $5,000.00 Automobile Accidental Death Indemnity benefit as per Part V of the policy."
The issue presented is whether the plaintiff is entitled to recover death benefits pursuant to Part V of the policy of insurance filed into evidence. As a prerequisite for recovery, the policy provides that the insured's death result from injuries sustained in or by an automobile as defined in the policy. Therefore, in order to resolve the issue presented herein, our first inquiry is to review the definition of "automobile" as set forth in the policy.
Under Part V of the policy, "automobile" is defined as follows:
"With respect to this insurance the word `automobile' means a land motor vehicle, trailer, or semitrailer not operated on rails or crawler-treads, but does not mean: (1) a farm type tractor or other equipment designed for use principally off public roads, except while actually upon public roads, or (2) a land motor vehicle or trailer while located for use as a residence or premises and not as a vehicle."
Whether the racing vehicle operated by Carney at the time of his death was an automobile within the meaning of the above definition is the matter for our decision.
The trial court concluded that the vehicle operated by Carney was not an "automobile" as defined by the policy provision. In Reasons for Judgment, the trial judge stated:
". . . The definitions of `automobile' in the policy before this Court is not ambiguous and means just what it says. The auto racer driver by Phillip Carney was designed principally for use off the public road. It is clear that this vehicle *817 could not be operated on the public highways of the State of Louisiana because it did not contain the required equipment set forth in La. R.S. Title 32:301-378.
Plaintiff argues that the insurer by its definition of the word "automobile" clearly affords him coverage with the inclusive language defining "automobile" as a "land motor vehicle, trailer, or semitrailer not operated on rails or crawler-treads" but attempts by construing the language "or other equipment designed for use principally off public roads, except while actually upon public roads" to take coverage away.
While plaintiff does not contest that a racing vehicle such as that driven by the deceased was designed for use principally off public roads, she does insist that it is definitely not "other equipment" as used in the above definition. Judge Domengeaux, in his dissent, argued plaintiff's case when he found the exclusion ambiguous. Plaintiff fortifies this argument by stating that the word "equipment" is a word of broad meaning and must be modified by an adjective to assume significant meaning. Thus, "other equipment" immediately follows "a farm type tractor." Accordingly, it must relate to other equipment of that nature and not an automobile, albeit a racing one that is clearly a land motor vehicle.
Plaintiff otherwise argues that if the wording meant to exclude a racing vehicle, it should have said so and to this extent the language is ambiguous and should be construed against the insurer so as to afford coverage for this type of vehicle.
The Court of Appeal correctly observed that the issue of whether this language is ambiguous has not been resolved in an appellate opinion in this state. However, the Supreme Courts in four of our sister states Kansas, Oregon, Nebraska and Texasas well as an appellate court of Ohio, have held that this exact language in a policy is not ambiguous.
Both the trial court and the Court of Appeal were of the opinion that the exclusionary language was not ambiguous, both relying on decisions of our sister states. As noted by the Court of Appeal, we are not bound by these cases, but differently from the Court of Appeal, we do not find them as persuasive. Furthermore, we have no doubt that the insurer did not intend to insure racing vehicles used primarily off public roads. However, we do believe that the language relied on to exclude such vehicles is ambiguous and we construe it against the insurer.
As noted below, in our mind, it is indeed questionable whether such language excludes a racing vehicle. The Court of Appeal found "equipment" to be a broad term, the meaning of which depends on the context in which it is used. We agree, but do not agree that it means some type of a "vehicle" in the context in which it was used. As a vague or broad term, the word "equipment" used alone means nothing. It must be modified by some adjective to assume significant meaning. Thus, such words as "farm," "hunting" or "photographic" give the word "equipment" meaning.
We would have no trouble excluding from coverage cotton balers, bean pickers, corn pullers or like equipment, because they are farm type tractors and are used primarily off public roads. However, our difficulty is like that of our learned brother, Judge Domengeaux, who stated in his dissent:
". . . In common parlance it is difficult to conceive that a racing car can logically be designated as `equipment.'"
While the insurer used the term "land motor vehicle" in its inclusionary language defining "automobile" and also in its exclusionary language under subdivision (2), would it not have been just as easy to exclude "land motor vehicles" used principally off public roads by using the word "vehicle" instead of "equipment." Why send the court to the dictionary to define "equipment" so as to opine that it includes a racing car as equipment used principally off public roads? Had the insurer desired to exclude racing cars from coverage, it seems to us this could have been more simply accomplished by using a "racing exclusion" as found in some policies.
*818 Thus, on the one hand, we have the drafters of the policy being quite specific concerning the use of the term "land motor vehicle" or "trailer" in some provisions of the policy and yet excluding a racing car as a land motor vehicle from coverage under the general or broad definition of "a farm type tractor or other equipment."
Judge Paul B. Landry of the First Circuit Court of Appeal in Martin v. Phillips, 356 So.2d 1016 (La.App. 1st Cir. 1977), in denying coverage under an exclusionary provision of an insurance policy, appropriately stated the following legal precepts which are applicable to resolving the issue here:
"The rules governing interpretation of written agreements apply to insurance contracts. La.C.C. Article 1901; Jennings v. Louisiana and Southern Life Insurance Company, 280 So.2d 297 (La.App. 1st Cir. 1973), and authorities therein cited.
"The terms and provisions of an insurance contract, as in the case of other written agreements, are to be construed in their general and popular meaning. Schmieder v. State Farm Fire & Casualty Company, 339 So.2d 390 (La.App. 1st Cir. 1976).
"Any ambiguity in an insurance contract will be construed against the insurer and in favor of the insured. Jennings, above.
"Where the terms of an insurance contract are clear and express, the agreement will be enforced between the parties according to its provisions because the contract is the law between the parties. Schmieder, above.
"An insurance contract must be interpreted as a whole. All terms and provisions of such a policy must be construed together to ascertain the true intent of the parties. La.C.C. Article 1948; Elledge v. Warren, 263 So.2d 912 (La.App. 3rd Cir. 1972)." (356 So.2d at 1018, 1019)
Following these same rules, however, we do find ambiguity in the above policy provision.
We also refer to the case of Hendricks v. American Employers Insurance Company, 176 So.2d 827 (La.App. 2nd Cir. 1965), writs refused, 248 La. 415, 179 So.2d 15, stating:
"The contract before the court in this case is, of course, not an ordinary business contract, but rather it is one of insurance. While it is true that the law of contracts and conventional obligations is applicable to contracts of insurance in general, there are some vital differences. One such difference is that contracts of insurance are unilaterally prepared in the confection of which the insured has no part. It is for this reason that it has become well-settled law in the field of insurance that words and phrases employed in a contract of insurance are to be construed, interpreted and defined in their ordinary and popular sense, rather than in a technical, philosophical or limited sense; that such words and phrases are to be construed liberally in favor of the policyholder and that all ambiguities are likewise to be resolved in favor of the policyholder. See Louisiana Civil Code Articles 1945 et seq., particularly Article 1957 and cases cited.
"Insurers may limit their liability where such limitation is clearly and expressly set forth in the contract of insurance. Such limitations or exclusions, however, must be free of ambiguity and sufficiently understandable to any given insured that it may be said that, in entering into the agreement containing such limitation, he understood and consented to such limitation. If the words or terms used in insurance policies are subject to more than one accepted meaning, then such words must be construed in the sense which is more favorable to the insured, unless such interpretation would lead to absurd results. See Louisiana Civil Code Articles 1957 and 1945(3)." (176 So.2d at 830)
Likewise in Bowab v. St. Paul Fire and Marine Insurance Company, 152 So.2d 66 (La.App. 3rd Cir. 1963), writ refused, 244 La. 664, 153 So.2d 881, Judge Tate (now Justice on our Court), in dissenting, stated:
"The majority pays lip service to the following principles of construction *819 recently summarized by us in Hardee v. Southern Farm Bureau Casualty Ins. Co., La.App. 3 Cir., 127 So.2d 220, 221-222: `The principles applicable to construction of insurance policies are not disputed. In case of ambiguity, the policy provisions are construed most favorably to the insured and against the insurer, and of the permissible constructions that will be adopted which effectuates the insurance over that which defeats it. . . ." (152 So.2d at 73)
Judge Tate further stated:
"In tax law, somewhat similarly, ambiguities in tax statutes are supposed to be construed in favor of the taxpayer. Brown v. LaNasa, 244 La. 314, 152 So.2d 33. In resolving an ambiguity in favor of the taxpayer, the Chief Justice very recently noted that the statutory clause `is susceptible of at least two constructions or interpretations, and, therefore, ambiguous.' 152 So.2d 36. (Italics added.)
"In applying this common-sense test of ambiguity, it seems to me obvious that the policy provision in question is susceptible of two reasonable constructions and is `therefore ambiguous'. In such instances, as we have shown, as a matter of law the courts are required to adopt that policy construction which affords protection to the insured, as against another construction which does nothowever much the court may feel that the insurance company which wrote and sold the policy and collected a premium therefor might have intended an equally reasonable construction which is, however, less favorable to its policyholder." (152 So.2d at 73)
Having found that the decision of the Court of Appeal must be reversed as to liability, we next determine whether the statutory penalties and attorney's fees should be awarded for arbitrarily refusing payment of the claim.
An insurer's liability to pay penalties and attorney's fees is based on whether their action in denying coverage is arbitrary, capricious and without probable cause. LSA-R.S. 22:658. An insurer must take the risk of misinterpreting its policy provisions. If it errs in interpreting its own insurance contract, such error will not be considered as a reasonable ground for delaying the payment of benefits, and it will not relieve the insurer of the payment of penalties and attorney's fees. Albert v. Cuna Mutual Insurance Society, 255 So.2d 170 (La.App. 3rd Cir. 1971), and cases therein cited.
In other words, insurers should not have their policy provisions interpreted at the expense of the insured, especially when they are charged with knowledge of their policy's contents.
However, these legal principles have no application to the defendant, because their denial of coverage was not arbitrary and capricious.
As noted by learned counsel for defendant, the trial court, three judges from the Third Circuit Court of Appeal and numerous justices from the Supreme Courts of the States of Kansas, Oregon, Nebraska and Texas, as well as an Ohio appellate court, have all held that the provision here in question is not ambiguous and rejected recovery based upon the identical policy language. Thus, he concludes, "If this clause were indeed `ambiguous' as contended by applicant, it would seem reasonable that at least one of the many learned judicial minds in both trial and appellate courts of our sister states would have so commented."
In view of these considerations, we find that the defendant's refusal to pay was not arbitrary, capricious or without probable cause.
For the above reasons, the judgment of the Court of Appeal is reversed, and judgment is rendered herein in favor of plaintiff, Mrs. Jenny M. Carney, and against the defendant, American Fire & Indemnity Company, in the full sum of $5,000, together with legal interest thereon from date of judicial demand until paid, and for all costs of these proceedings.
REVERSED AND RENDERED.
MARCUS, J., dissents and assigns reasons.
*820 MARCUS, Justice (dissenting).
I agree with the courts below that the racing vehicle operated by Carney at the time of his death was not an "automobile" as defined in the policy. Accordingly, I respectfully dissent.