FORET, Judge.
This is a suit for damages filed by John Hidalgo, individually and on behalf of his minor daughter, Jerilyn, who was injured when struck by a go-cart[1] operated on a public street, by Troy Arnaud, minor son of defendant, Francis Arnaud. Also made defendants were (1) Allstate Insurance Company, Francis Arnaud’s homeowners insurer; and (2) Hanover Insurance Company, the automobile liability and uninsured motorist carrier on three motor vehicles owned by John Hidalgo.
Allstate Insurance Company and Hanover Insurance Company each moved for summary judgment contending that their respective policies excluded coverage for the type of vehicle involved herein, to-wit, the go-cart. The trial court granted the mo *1263 tions for summary judgment, dismissing plaintiff’s suit with prejudice, as to the two insurers.
HANOVER COVERAGE
Hanover Insurance Company’s automobile policy issued to John Hidalgo included a “Part IV-Protection Against Uninsured Motorists”. In that section of the policy “uninsured automobile” was defined as:
“ ‘uninsured automobile’ includes a trailer of any type and means:
(a) An automobile or trailer with respect to the ownership, maintenance or use of which there is, in at least the amounts specified by the financial responsibility law of the state in which the insured automobile is principally garaged, no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legálly responsible for the use of such automobile, or with respect to which there is a bodily injury liability bond or insurance policy applicable at the time of the accident but the company writing the same denies coverage thereunder or
(b) a hit-and-run automobile;
but the term ‘uninsured automobile’ shall not include:
(1) an insured automobile or an automobile furnished for the regular use of the named insured or a relative,
(2) an automobile or trailer owned or operated by a self-insurer within the meaning of any motor vehicle financial responsibility law, motor carrier law or any similar law,
(3) an automobile or trailer owned by the United States of America, Canada, a state, a political subdivision of any such government or an agency of any of the foregoing,
(4) a land motor vehicle or trailer if operated on rails or crawler-treads or while located for use as a residence or premises and not as a vehicle, or
(5) a farm type tractor or equipment designed for use principally off public roads, except while actually upon public roads.”
Hanover argues that this go-cart is not included here as it is not an “automobile”.
The recent decision of the Louisiana Supreme Court in Carney v. American Fire & Indemnity Company, 371 So.2d 815 (La.1979), concerns a similar situation.
In the Carney case, the decedent was killed while driving a Formula Ford racing vehicle in competition at Texas World Speedway in Bryan, Texas. The Formula Ford vehicle was an untitled, unlicensed, single seater, four wheel motor vehicle; it was not intended or suited for use on public highway; it was purely a racing machine.
His widow brought an action against his automobile liability insurer on a policy which provided benefits for accidental death if such resulted from injuries sustained in or by an automobile (as defined by the policy). That policy defined “automobile” as:
“With respect to this insurance the word ‘automobile’ means a land motor vehicle, trailer, or semitrailer not operated on rails or crawler-treads, but does not mean: (1) a farm type tractor or other equipment designed for use principally off public roads, except while actually upon public roads, or (2) a land motor vehicle or trailer while located for use as a residence or premises and not as a vehicle.”
The trial court and this Court[2] both found that the Formula Ford machine was not an “automobile” within the meaning of the insurance policy: that it was “equipment” designed for use off public roads.
The Louisiana Supreme Court reversed, holding that the language used in the policy above quoted was ambiguous and construed it against the insurer: that the terms “other equipment” could not logically, in context, be said to unambiguously exclude this racing machine.
The Court thus followed the well established rule of construing ambiguous insur- *1264 anee contracts against the insurer and in favor of the insured.
In the present case the word “automobile” as in the above set forth uninsured motorist coverage of the Hanover policy is not defined there or elsewhere in the policy. The uninsured motorist provision does exclude, as did the policy in Carney, “a farm-type tractor or equipment designed for use principally off public roads, except while actually upon public roads”.
As noted above, in Carney the word “equipment” was not found to unambiguously exclude the Formula Ford vehicle, and we cannot see a legal difference between that vehicle and the go-cart presently before us.
Both vehicles are small four wheel, single seat, rear engine machines. The Formula Ford is somewhat larger and usually would have an aerodynamically improved body configuration. Neither vehicle is licensable in the State of Louisiana, and neither is generally intended for use on public roads.
We do not find that the uninsured motorist coverage of the Hanover policy unambiguously excludes such a vehicle from coverage and the summary judgment of the trial court dismissing Hanover Insurance Company is reversed and the case is remanded to the district court for a full trial on the merits.
ALLSTATE COVERAGE
Defendant, Francis Arnaud, had a homeowners insurance policy with Allstate Insurance Company which, plaintiff alleges, provides coverage in the present situation. Allstate claims that there is no coverage for the accident, citing the exclusion section of the policy (Section II):
“This policy does not apply:
‘1. Under Coverage X-Family Liability and Coverage Y-Guest Medical Payments:
(a) to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of:
* * * * * *
(3) any recreational motor vehicle owned by any Insured, if the bodily injury or property damage occurs away from the residence premises; but this subdivision (3) does not apply to golf carts while used for golfing purposes.’ ”
Allstate alleges that the instant go-cart is a “recreational motor vehicle” and excluded by the above quoted sub-section (3). The term “recreational motor vehicle” is defined in the policy as:
“ ‘recreational motor vehicle’ means (1) a golf cart or snowmobile or (2) if not subject to motor vehicle registration, any other land motor vehicle designed for recreational use off public roads.”
We have been referred to a recent decision of the Fourth Circuit Court of Appeals, Robertson v. Perry, 370 So.2d 596 (La.App. 4 Cir. 1979), writs applied for June 12, 1979 (# 64,867). In that case, defendant’s minor child’s “toy motor scooter”, while operated by another minor child, knocked down and injured plaintiff’s minor child. Defendant’s homeowners liability insurer was also made a party defendant, but objected, alleging that it provided no coverage for such an incident based on its policy’s exclusion of injury in these circumstances caused by a “recreational motor vehicle”.
The Fourth Circuit, in reversing the trial court, held that the “toy motor scooter”[3] was not unambiguously excluded from coverage and under rules of construing insurance contracts against the insurer and in *1265 favor of coverage, that it would be covered[4].
Defendant, Hanover Insurance Company, would have us analogize this “toy motor scooter” to the instant go-cart. We do not believe such to be correct in either the physical or legal sense. As noted above, we considered this go-cart to be closer in spirit and design to Carney’s Formula Ford machine, which our Supreme Court has found not to be excluded from automobile insurance coverage.
We also note that one judge of the three-judge Fourth Circuit Court of Appeals panel, in a concurring opinion, was of the opinion that the toy motor scooter (or as he refers to it, a “motorized mini-bike”) was a “recreational motor vehicle” within the scope of the insurance exclusionary clause.
While the instant go-cart has physical characteristics of both the motor scooter in Robertson and the Formula Ford racer in Carney, we believe (following the rationale of Carney) that it more closely resembles an automobile than the toy, and thus find coverage under Hidalgo’s automobile insurance policy with Hanover Insurance Company, and thus excluded by the provisions of Arnaud’s homeowners insurance policy with Allstate Insurance Company.
For the foregoing reasons the judgment of the trial court is affirmed in part, reversed in part and remanded to the trial court for further proceedings in accordance with the views and findings hereinabove expressed.
All costs of this appeal áre assessed against Hanover Insurance Company.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
CULPEPPER, J., concurs and assigns reasons, therefor.

. Trooper Herrin Ducote of the Louisiana State Police described the go-cart as:
“A homemade go-cart consisting of a riding lawn-mower frame, approximately five feet long, thirty inches in width, having a ground clearance of approximately four inches; the go-cart being powered by a six horse power Sears, Briggs and Straton [sic] gasoline engine situated over the rear axle with a sprocket attached to the rear axle and the engine axle connected by a chain; said go-cart able to reach a speed of approximately 23 miles per hour.”

. 364 So.2d 1386.

. The Fourth Circuit described the toy motor scooter as:
“Like that toy automobile, the toy scooter here is not a means of transportation. It is not a reduced-size motorcycle, a ‘minibike’ with powerful engine capable of relatively high speeds. It uses a lawn-mower size or smaller engine capable of speed of five to ten mph, a speed easily attainable on the ordinary bicycle. Its tires are no more than ten inches in outside diameter, on axles bolted directly to its tubular frame with neither springs nor shock absorbers. Its seat is slightly more than knee-high to its now 13-year-old owner.”

. We note that, on other grounds, the Court reversed the trial court judgment in favor of plaintiff.