**Wilfred H. BOUDREAUX,**
**Plaintiff-Appellee,**

v.

**FIREMAN'S FUND INSURANCE COMPANY, Defendant-Appellant.**

No. 81–3005

Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Unit A

Aug. 28, 1981.

Gerard M. Dillon, New Orleans, La., for defendant-appellant.

Rene Pastorek, Thomas L. Gaudry, Jr., Daniel A. Ranson, Gretna, La., for plaintiff-appellee.

Before BROWN, POLITZ and TATE, Circuit Judges.

## 448

JOHN R. BROWN, Circuit Judge:

Wilfred H. Boudreaux brought this action originally to recover major medical expenses under an insurance policy for members of the Louisiana State Bar Association issued by defendant/appellant, Fireman's Fund. The events leading to the case are undisputed and were submitted to the District Court upon stipulations and briefs of counsel. Judgment was rendered in favor of Boudreaux for $26,166.53 with an additional $1,710 in attorney's fees plus 12% interest on the amount of loss. The interest award was based on the Court's finding that the Company's declination of coverage and liability under the policy's terms was arbitrary and capricious. Fireman's Fund appeals this judgment and seeks a determination of two issues: (i) whether or not the insurance contract provided coverage for expenses occurring after the dependent son ceased to be covered by the policy, but whose sickness had its origin while the son was still insured, and (ii) whether the Company's denial of liability was so arbitrary and capricious as to entitle the insured to a recovery of attorney fees plus 12% interest on the amount of loss.

### AMBIGUITY?

John C. Boudreaux, age twenty-four, graduated from Tulane School of Law in May 1978. In late July and early August of that summer, he began to develop eye problems which eventually led to a diagnosis of reticulum cell sarcoma of the brain. From August until his death in March 1979, a total of $26,166.53 in medical expenses was incurred in combating the disease. The Court found it undisputed that John C. Boudreaux was an "insured dependent" under the terms of the policy,[1] but at the time the medical expenses were actually incurred, he had ceased to be an "insured

dependent" because he was no longer a full time student.

However, based on the reports in the record by attending physicians, the Court went on to find that because the onset of decedent's sickness commenced approximately six months prior to any overt symptomatology, he was an "insured dependent" under the terms of the policy at the time his illness commenced. Thus, the insurer was obligated to pay those reasonable medical expenses incurred as a result of that sickness, notwithstanding that the expenses themselves were not incurred until after coverage terminated. The resolution to the present appeal, therefore, centers on the correct interpretation of clause 1 of the policy which details when expenses are *incurred.*

> When, as a result of injury or sickness *and commencing* while this insurance is in force as to an insured person, such insured person incurs expenses listed in section three, the company will pay . . . reasonable expenses actually incurred . . . as a result of any one period of sickness . . . (emphasis supplied)

Fireman's Fund argues that the provision is clear and unambiguous, and does not provide coverage with respect to expenses incurred as a result of a sickness that commences while a "dependent insured" is still an insured under the policy where his sickness is not discovered or diagnosed and no expenses are incurred until he no longer is covered. Simply stated, the actual loss must have occurred while the policy was in force.

According to Fireman's Fund's interpretation of the provision, there are two conditions which must be met in order for coverage to follow: (i) as a result of injury or sickness, such insured person incurs expense *and* (ii) commencing while this insurance is

---

1. The policy provides that an "insured person" is either "the insured" or an "insured dependent." The latter category is subdivided into four groups, (i) the insured's spouse, (ii) the insured's unmarried children under twenty-four years of age, (iii) the insured's unmarried children between the ages of twenty-four and twenty-eight, provided that they are full time students and dependent upon the insured, and (iv) the insured's unmarried children beyond twenty-four years of age who are incapable of self-sustaining employment by reason of mental retardation or physical handicap and are chiefly dependent upon the insured. The Court found that John B. Boudreaux was in category (iii).

in force as to an insured person, such insured person incurs expense. It is their position that the rules of construction in interpreting contracts requires the Court to construe the word "and" as a conjunctive which is its plain, common and usual significance. *Bergholm v. Peoria Life Insurance Co.*, 284 U.S. 489, 492, 52 S.Ct. 230, 231, 76 L.Ed. 416, 419 (1932); *Calcasieu-Marine National Bank of Lake Charles v. American Employers Insurance Co.*, 533 F.2d 290, 295–96 (5th Cir. 1976); *Muse v. Metropolitan Life Insurance Co.*, 193 La. 605, 192 So. 72, 75 (1939); *Floyd v. Pilot Life Insurance Co.*, 135 So.2d 546, 548 (La.App.1961). Variance from this rule is only if a word is used as a "term of art", in which case its meaning in the area for which it is a term of art is applied. *See* LSA–C.C. Art. 1947; *Reliance Insurance Co. v. Orleans Parish School Board*, 322 F.2d 803, 806, *cert. denied*, 377 U.S. 916, 84 S.Ct. 1180, 12 L.Ed.2d 186 (1963). Such is not the case here argues Fireman's Fund.

Although Boudreaux agrees with Fireman's Fund designation of the word as a conjunctive, he disagrees with the phrase which it conjoins. Instead, Boudreaux submits that a more reasonable interpretation would be that the word "and" conjoins the phrase which precedes it with the phrase which follows it—"as a result of injury and sickness *and* commencing while the insurance is in force as to an injured person."

Boudreaux reenforces this interpretation by calling attention to the comma which separates the phrase referring to injury and sickness which commences during the policy period, and the phrase regarding expenses the company will pay. Because a comma's primary function is to separate ideas within a sentence, it is logical, asserts Boudreaux, to assume that the phrase "commencing while the insurance is in force . . ." modifies the phrase "injury and sickness" rather than "expenses." This is also the most logical interpretation from the insurer's view point because it indicates that the insurer will not pay for pre-existing injury or sickness.

In assessing these two arguments, the District Court concluded that clause 1, coupled with the policy definition of sickness [2] rendered the policy ambiguous and susceptible to two different interpretations producing opposite results. Clause 1 could be interpreted as requiring only that the expense be incurred as a result of sickness *and* that the sickness commence while the insurance is in force *or* that the expense be the result of sickness *and* that the expense be incurred while the insurance is in force as to the insured. Consequently, if the policy language is not found to be clear, the rules of construction and interpretation require a construction favorable to the insured to provide coverage. [3] Under these

---

**2.** The definitions of "injury", "sickness", and "period of sickness", as contained in the policy are as follows:

'Injury', whenever used in this Policy, means accidental bodily injury resulting directly and independently of all other causes and laws covered by this Policy commencing while this Policy is in force as to the Insured Person whose injury is the basis of claim; and 'sickness', wherever used in this Policy, means sickness or disease causing loss commencing while this Policy is in force as to the Insured Person whose sickness is the basis of claim. 'Period of Sickness', wherever used in this Policy, means a period during which covered expenses are incurred as a result of sickness whether or not benefits are payable hereunder for such covered expenses . . . .

It appears from the language of the policy that the word "commencing" can be read to modify "loss" or it can also be read to modify "sickness".

**3.** The District Court in so holding relied on *Hendricks v. American Employers Insurance Co.*, 176 So.2d 827 (La.App.1965) and *quoted in Carney v. American Fire and Indemnity Co.*, 371 So.2d 815 (La.1979):

"The contract before the court in this case is, of course, not an ordinary business contract, but rather it is one of insurance. While it is true that the law of contracts and conventional obligations is applicable to contracts of insurance in general, there are some vital differences. One such difference is that contracts of insurance are unilaterally prepared in the confection of which the insured has no part. It is for this reason that it has become well-settled law in the field of insurance that words and phrases employed in a contract of insurance are to be construed, interpreted and defined in their ordinary and popular sense, rather than in a technical, philosophical or limited sense; that such words and phrases are to be construed liberally in favor

circumstances the Court found coverage. Agreeing with the Court's analysis and supportive legal reasoning, we affirm the ultimate finding of liability against Fireman's Fund.

### STATUTORY PENALTIES *

Fireman's Fund also challenges the District Court's award of statutory penalties and attorney's fees pursuant to LSA–R.S. 22:658, which provides that where the insurer's failure to make payment is found to be arbitrary, capricious, or without probable cause, the insured is entitled to an award of twelve percent (12%) of the total amount due with reasonable attorney's fees for the prosecution of the claim.[4] We must determine whether Fireman's Fund's failure to make timely payments to the insured was arbitrary, capricious or without probable cause within the intendment of this statute.

The district court and Boudreaux rely on language from the Supreme Court of Louisiana in *Carney v. American Fire and Indem. Co.*, 371 So.2d 815, 819 (La.1979), to support a penalties and attorney's fees award:

> An insurer's liability to pay penalties and attorney's fees is based on whether their action in denying coverage is arbitrary, capricious and without probable cause. LSA–R.S. 22:658. An insurer must take the risk of misinterpreting its policy provisions. If it errs in interpreting its own insurance contract, such error will not be considered as a reasonable grounds for delaying the payment of benefits, and it will not relieve the insurer of the payment of penalties and attorney's fees. *Albert v. Cuna Mutual Insurance Society*, 255 So.2d 170 (La.App. 3rd Cir. 1971) and cases therein decided.

*Accord, Sanders v. General American Life Ins. Co.*, 364 So.2d 1373, 1378 (La.App.3d Cir. 1978); *Rushing v. American Income Ins. Co.*, 274 So.2d 458, 460 (La.App.3d Cir. 1973).

---

of the policyholder and that all ambiguities are likewise to be resolved in favor of the policyholder. See Louisiana Civil Code Articles 1945 et seq., particularly Article 1957 and cases cited.

"Insurers may limit their liability where such limitation is clearly and expressly set forth in the contract of insurance. Such limitations or exclusions, however, must be free of ambiguity and sufficiently understandable to any given insured that it may be said that, in entering into the agreement containing such limitation, he understood and consented to such limitation. If the words or terms used in insurance policies are subject to more than one accepted meaning, then such words must be construed in the sense which is more favorable to the insured, unless such interpretation would lead to absurd results. See Louisiana Civil Code Articles 1957 and 1945(3)." (176 So.2d at 830)

*Carney*, 371 So.2d at 818.

\* This portion of the opinion was authored by Judge Politz. As precedent for this procedure *see Grigsby v. Coastal Marine Service of Texas, Inc.*, 412 F.2d 1011, 1023 (5th Cir. 1969). *See also Triangle Publications v. Knight-Ridder Newspapers*, 626 F.2d 1171 (5th Cir. 1980); *Gates v. Collier*, 616 F.2d 1268 (5th Cir. 1980); *Usery v. Tamiami Trail Tours, Inc.*, 531 F.2d 224, 239 (5th Cir. 1976); *United States v. Register*, 496 F.2d 1072, 1075–76 (5th Cir. 1974), cert. denied, 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 819 (1975); *Stanga v. McCormick Shipping Corp.*, 268 F.2d 544, 546, 551 (5th Cir. 1959).

4.  R.S. 22:658 provides:

    *All insurers issuing any type of contract other than those specified in R.S. 22:656 and 22:657 shall pay the amount of any claim due any insured including any employee under Chapter 10 of Title 23 of the Revised Statutes of 1950 within sixty days after receipt of satisfactory proofs of loss from the insured, employee or any party in interest. Failure to make such payment within sixty days after receipt of such proofs and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of 12% damages on the total amount of the loss, payable to the insured, or to any of said employees, together with all reasonable attorney's fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, 12% of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney's fees for the prosecution and collection of such amount. Provided, that all losses on policies covering automobiles, trucks, motor propelled vehicles and other property against fire and theft, the amount of the penalty in each of the above cases shall be 25% and all reasonable attorney's fees.*

Noting that in *Carney* the award of penalties and attorney's fees were reversed and in view of the subsequent decision by the Louisiana Supreme Court in *Rudloff v. Louisiana Health Services and Indem. Corp.*, 385 So.2d 767 (La.1980), (on rehearing), and the concerns we voiced in *Offshore Logistics Services, Inc. v. Arkwright-Boston Manufacturers Mut. Ins. Co.*, 639 F.2d 1142 (5th Cir. 1981), a critical examination of LSA–R.S. 22:657–58 and interpretative jurisprudence is in order.

■ As a general proposition, if an insurance policy is ambiguous, the court will adopt any reasonable interpretation which favors the insured. *Calcasieu-Marine Nat'l Bank v. American Employers Ins.*, 533 F.2d 292 (5th Cir. 1977); *Graham v. Equity Nat'l Life Ins. Co.*, 373 So.2d 988 (La.App.3d Cir. 1979). An insurer is not precluded from seeking a judicial determination of its contractual liability, *Cotlar v. Gulf Ins. Co.*, 318 So.2d 923 (La.App. 4th Cir. 1975), but it must bear the expenses of that determination and shoulder the risk of penalties and attorney's fees should its interpretation of the policy prove erroneous. *Carney, supra. See Smith v. Reserve Nat'l Ins. Co.*, 370 So.2d 186 (La.App.3d Cir. 1976).

The statutory scheme is apparent; insurers are discouraged from lightly denying coverage. An unreasonable denial will result in a sanction in the form of an award of attorney's fees and assessment of a penalty. Under R.S. 22:657 an insurer may dispute coverage of a health and accident policy and avoid penalty exposure if its position is based on "such as would put a reasonable and prudent businessman on his guard." *Rudloff, supra*, provides an instructive illustration of the rare factual circumstances in which an insurer may unsuccessfully dispute coverage based on a policy interpretation and avoid sanctions.

In *Rudloff*, the insured was treated for mental disorders which were specifically excluded from the policy at issue. A provision of the insurance code, R.S. 22:213.2, requires that health and accident insurers offer coverage for mental disorders, and mandates that if the insurer does not do so the policy is to be interpreted as if coverage had been offered and accepted. Citing this statute the insured claimed coverage for the expenses of her treatment for mental disorders. The *Rudloff* insurer countered with the assertion that the statute was inapplicable because of the holding of the Louisiana Supreme Court in *Tabb v. Louisiana Health Services and Indem. Co.*, 361 So.2d 862 (La.1978), that the type of policy in question was not a health and accident contract. 385 So.2d at 770. The court agreed that *Tabb* had so categorized the type of policy in dispute but then overruled *Tabb*. Having done so, the court was confronted with the thorny problem presented by the insured who claimed penalties and attorney's fees because the insurer had denied coverage based on a misconstruction of its policy. Under the circumstances the *Rudloff* court was not prepared to rule that the insurer's denial of coverage was unreasonable. Indeed until *Tabb* was overruled, the position of the insurer was not only tenable, it was supported by Louisiana Supreme Court precedent. Without elaboration the court opined that the "defendant was justified in relying on its policy exclusion and is not liable for penalties or attorney's fees." *Id.* at 771.

The *Rudloff* court approvingly cited *Valladares v. Monarch Ins. Co.*, 282 So.2d 569 (La.App. 4th Cir. 1973), and *Cotlar v. Gulf Ins. Co.*, 318 So.2d 923 (La.App. 4th Cir. 1975), as other instances in which a coverage dispute did not result in sanctions. A brief review of the novel factual settings in these two cases demonstrates that an insurer will be relieved of paying penalties, after unsuccessfully denying coverage on a policy interpretation, in only the extraordinary case. In *Cotlar*, a Louisiana intermediate appellate court resolved for the first time the question whether Mardi Gras doubloons were numismatic property. The court concluded that the insurer had not acted unreasonably in claiming that they were. *Valladares* presented another *res nova* question as to whether certain plastic surgery expenses were covered under an automobile policy. The same appellate court found

that the denial was reasonable. In each instance, the court applied the standard of R.S. 22:658 which provides for penalties when the insurer's action denying coverage is "arbitrary, capricious, or without probable cause."

In *Offshore Logistics* we expressed a concern as to the impact that *Rudloff* might have on the Louisiana rule "that an erroneous, though reasonable interpretation of the policy by an insurer subjects the insurer to the statutory penalty and attorney's fees." *Id.* at 1145. We claim no keener ability to predict the full impact of *Rudloff*, but after our examination of the statutes and jurisprudence, we are persuaded that *Rudloff* will be confined to its unusual fact situation. We are convinced that the parameters of reasonable coverage denials, based on policy interpretations, will remain very narrow.

We recently affirmed the assessment of attorney's fees in *Fidelity & Cas. Co of N.Y. v. Superior Casing*, 642 F.2d 147 (5th Cir. 1981). In *Fidelity* there was no evidence of ambiguity, indeed, we found that the language of the policy clearly obligated the insurer to provide coverage. *Fidelity* is not inconsistent with *Offshore* and *Rudloff*.

 In the case now before us the insurer attempts to depict the question presented as one of first impression, a valid consideration, *Cotlar* and *Valladares, supra*. However, as the Louisiana appellate court has observed, this factor alone is not determinative of the issue of sanctions: "Even if an issue is res nova ... an insurer may be cast for penalties." *Paret v. Louisiana Health Serv. and Indem. Co.*, 366 So.2d 634, 637 (La.App.3d Cir. 1978). The judgment of the district court awarding attorney's fees and penalties, in the case at bar, is consistent with the Louisiana rules that if a policy is subject to two reasonable interpretations the one affording coverage is favored and an "insurer must take the risk of misinterpreting its policy provisions." *Carney*, 371 So.2d at 819.

The judgment of the district court is AFFIRMED.