619 So.2d 1213 (1993)
Ruth A. WILSON, Plaintiff-Appellee,
v.
AETNA CASUALTY AND SURETY COMPANY, Defendant-Appellant.
No. 92-1102.
Court of Appeal of Louisiana, Third Circuit.
June 2, 1993.
*1214 Vincent Ross Cicardo, Alexandria, for Ruth A. Wilson.
Andrew Parker Texada, Alexandria, for Aetna Cas. and Sur. Co.
Before LABORDE, THIBODEAUX and DECUIR, JJ.
THIBODEAUX, Judge.
Defendant, Aetna Casualty and Surety Company, appeals a judgment holding it liable for repairs to the home of plaintiff, Ruth Wilson. The trial judge found that damages asserted by Mrs. Wilson were covered by a homeowners insurance policy issued by Aetna, and awarded $6,000.00 plus interest and costs. For the following reasons, we affirm.

FACTS
The facts are undisputed. Aetna issued a homeowners policy to Ruth Wilson on August 24, 1987, providing coverage for a log home she and her husband purchased in Alexandria, Louisiana. In 1991, Jim Wilson, plaintiff's husband, noticed one of the logs on the exterior had become twisted and soft. The Wilsons also began experiencing water leakage into the home during rain storms. Shortly thereafter, Mrs. Wilson filed a claim with Aetna. After Aetna had the home inspected, it determined the damage was due to water rot and was specifically excluded from coverage.
Suit was filed, and the matter came to trial on April 30, 1992. Each party introduced an expert to testify to the cause of the rotting and the extent of the damage, if any, to the structural integrity of the home. The matter was taken under advisement, reasons for judgment were issued on July 27, 1992, and judgment was signed on August 7, 1992.
The trial judge found that the deterioration of the logs in the home amounted to a "collapse" due to "hidden decay" which was specifically covered by the policy. He ruled that the policy language, which purports to exclude coverage for property damage due to "wet rot," was ambiguous and contradictory and thus not applicable to Mrs. Wilson's claim. Furthermore, he found that Aetna was in a superior position in that it knew or should have known the tendency of log homes to rot, and could have specifically excluded such an occurrence. *1215 He awarded $6,000.00, representing the cost to repair the damaged walls. Aetna appealed.

ISSUES
(1) Whether the determination that the damage to the Wilsons' home was a "collapse" due to "hidden decay" was erroneous, and;
(2) Whether the trial court erred in ruling the damages were not specifically excluded.

DISCUSSION
The language of the policy pertinent to the first issue is as follows:
* * * * * *
8. Collapse. We insure for direct physical loss to covered property involving collapse or a building or any part of a building caused only by one or more of the following:
* * * * * *
b. hidden decay;

* * * * * *
Webster's Third International Dictionary defines "collapse" in part as:
1: to break down completely ...: crumble into insignificance or nothingness: DISINTEGRATE ... 2: to fall or shrink together abruptly and completely: fall into a jumbled or flattened mass through the force of external pressure
. . .
Aetna emphasizes that part of the definition of "collapse" refers to an abrupt or sudden occurrence. It argues that for a collapse to have occurred to the Wilsons' home, an immediate event, such as an entire wall falling completely down, was required. We disagree. Such an interpretation or the word is too narrow, as illustrated by the foregoing definition.
The testimony of Walter Lafargue, Mrs. Wilson's expert, was that logs on three different walls were extremely rotten. He stated that the logs had deteriorated to a point that the whole structural integrity of the home was compromised. He classified the condition of the logs as a collapse. Aetna's expert, Leroy Deselle, was, not surprisingly, less inclined to believe the damage to the house was so serious. He stated caulking and sealing the affected logs would be sufficient repairs. However, when asked what he would do if the home were his, he stated he would replace all of the "soft" logs because they were not "sound." The trial judge obviously gave more credence to Lafargue's testimony. When opposing experts give opposing views, the trial judge's reliance on one view over the other is given great deference. Agricultural Equipment Co., Inc. v. Rozas, 488 So.2d 241 (La.App. 3d Cir. 1986).
The trial judge noted the special nature of a log home. Log homes are unique in that the logs make up both the exterior and interior walls. These logs bear the weight of the wall as well as the roof. The logs in the Wilsons' home rotted over time due to their exposure to water. The trial judge found that the Wilsons took precautions against rot but were unable to prevent it. This exposure caused a decay of the structural integrity of the affected logs, and led to loss of the ability to support the weight of the home. This loss of structural integrity resulted in the wood going "soft" and is, in effect, a "collapse" of part of the building. The decay is "hidden" because it occurred from the inside out, and was not detected until the logs had already deteriorated to a collapsed state. The trial judge did not commit error in finding coverage under that portion of the policy.
The second issue raised by Aetna is that coverage is specifically excluded because the damage to the home was as a result of "wet rot." The relevant policy language is as follows:
* * * * * *
We insure against risks of direct loss to property described in Coverages A and B only if that loss is a physical loss to property; however, we do not insure loss:
1. involving collapse, other than as provided in Additional Coverage 8;

*1216 2. caused by:
* * * * * *
(3) smog, rust, mold, wet or dry rot;
* * * * * *
The trial judge found this exclusion to be ambiguous and thus not applicable. Any exclusion from coverage must be clear and unambiguous. Capital Bank & Trust Co. v. Equitable Life Assurance Society, 542 So.2d 494 (La.1989). Ambiguities in the provisions of an insurance policy are to be resolved in favor of the insured. Garcia v. St. Bernard Parish School Board, 576 So.2d 975 (La.1991); Carney v. American Fire & Indemnity, 371 So.2d 815 (La.1979).
Aetna argues that the damage to the logs is from "wet rot," as listed in the exclusion, and therefore coverage does not apply. What Aetna fails to recognize is the policy language stating coverage is excluded for "collapse other than as provided in Additional Coverage 8." "Additional Coverage 8" is collapse due to, among other things, hidden decay.
In the very least, there is ambiguity in the exclusion portion of the policy. Nevertheless, we believe the clear implication of the relevant policy provisions is that wet rot is excluded except where its presence causes hidden decay leading to collapse. We have already affirmed the trial judge's finding of a collapse due to hidden decay within the meaning of the policy and, accordingly, we affirm his finding that the exclusion does not apply. This assessment is without merit.
For the foregoing reasons, the judgment is affirmed. Aetna is charged with costs of this appeal.
AFFIRMED.