DUFRESNE, Judge.
This is an appeal by Ralph and Berdie Mae Bennett, plaintiffs-appellants, from a summary judgment in favor of Pelican State Mutual Insurance Company, defendant-appellee, wherein the trial judge rules that Pelican did not provide uninsured motorist coverage in the insurance policy at issue here. For the following reasons, we affirm.
Ralph Bennett was allegedly injured in a motor vehicle accident while driving a truck owned by his brother, Marvin. Marvin’s liability insurer at the time of the accident was Pelican. Ralph and Berdie Mae, his wife, sued the alleged tortfeasor and his insurer, as well as Pelican, as Marvin’s UM insurer. Pelican denied that it provided UM coverage, and produced a waiver of such coverage signed by Marvin. After a hearing in the matter, the trial judge ruled that the UM waiver form was valid and that Pelican did not provide such coverage. He thus granted summary judgment in Pelican’s favor, dismissing it from this suit. Plaintiffs now appeal, alleging that the UM waiver form was invalid, first because it was not “designed” by the insurer, and second, because that form was never submitted to the Insurance Commissioner for approval.
Before discussing the law applicable here, we first note that there is no allegation that the form on its face does not comply with Louisiana’s UM insurance statute. Neither is there any dispute that Marvin knowingly and willingly rejected such coverage in writing attached to the policy, and dated prior to the date of the accident at issue.
It is further agreed that the UM waiver form was not actually prepared from “scratch” by Pelican, but was rather selected from a number of available forms and designated by the company for use with all of its motor vehicle liability policies. It is finally stipulated by Pelican that it did not submit a copy of this form to the Insurance Commissioner for approval.
The statute upon which plaintiffs rely is Act No. 436 (1987), La.R.S. 22:1406(D)(1)(a), in effect at the time of the accident at issue here, which provided:
D. The following provisions shall govern the issuance of uninsured motorist coverage in this state:
(l)(a) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; provided, however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing, as provided herein, the coverage or selects lower limits. Such coverage need not be provided in or supplemental to a renewal or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer. After the effective date of this Act, such rejection or selection of lower limits shall be made only on a form designed by each insurer. The form shall be provided by the insurer and signed by the named insured or his legal representative. The form signed by the named insured or his legal representative which initially rejects such coverage or selects lower limits shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto.
* * # * * *
*513 Section 2. The legislature expressly declares its intent that legally enforceable rejection of uninsured motorist coverage or selection of lower limits shall be made only on the standard form provided for in this Act. Other writings, letters, communications, or miscellaneous documents shall not be deemed evidence of the intent of any insured in this matter.
There is no dispute that Pelican, after reviewing a number of available standard UM waiver forms, selected one of three for use with all of its policies, and notified all agents selling those policies that this form and no other was to be used. Plaintiffs urge, however, that because Pelican did not design the form “from scratch”, it cannot be a valid form.
In this court’s opinion, this argument is without merit. Indeed, Section 2 of the above act refers to the “standard form provided for in this Act.” When read in conjunction with the previous language which refers to a “form designed by each insurer”, it is evident that the legislature’s intent was simply to have each insurer use the same form with each of its policies, which form would then be deemed the “standard form” for that particular company. As to the word “designed”, we conclude that in this context it means nothing more than the selection and designation of a particular form as that company’s standard form to be used with all of its policies.
Plaintiff’s second argument, that the failure to submit the form to the Insurance Commissioner renders it void, is equally without foundation. Our reading of the above statute is that all automobile liability policies issued in this State must offer UM coverage in the same amounts as the primary coverages, “under provisions filed with and approved by the commissioner of insurance”. There is no allegation that the instant policy was not in compliance with this law or that it had not been submitted to, and approved by, the Commissioner. We find nothing in that law which mandates that the UM waiver form also be submitted for approval. The only language in the statute as to the formalities of such form is that it be designed by each insurer as its own standard form.
Further, La.R.S. 22:620, the general statute requiring submission of forms to the Commissioner for approval, states that:
This section shall not apply to policies, riders or endorsements designed to delineate the coverage for and used with relation to insurance upon a particular subject.
The UM waiver here is clearly designed to delineate the coverage provided in the main policy by specifying that UM coverage, although offered in the policy, is rejected by the insured. Finally, La.R.S. 22:653, relating to the validity of non-complying forms, provides that any policy, rider or endorsement otherwise valid, but not in compliance with the insurance code, “shall be construed and applied in accordance with such conditions and provisions as would have applied had such policy, rider or endorsement been in full compliance with this Code.”
In Roger v. Estate of Moulton, 513 So.2d 1126 (La.1987), the court held that:
to effect a valid rejection of the UM coverage under La.R.S. 22:1406(D)(1)(a), the insured or his authorized representative must expressly set forth in a single document that UM coverage is rejected in the State of Louisiana as of a specific date in a particular policy issued or to be issued by the insurer (at 1132).
In the present ease, the waiver form fully comports with these requirements. Thus, even could it be said that the form should have been submitted to the Commissioner for approval, the failure to do so is not fatal to the document’s validity as it otherwise fully complies with all other provisions of the Insurance Code.
For the foregoing reasons, the judgment of the trial court is hereby affirmed.
AFFIRMED.