595 So.2d 606 (1992)
Elizabeth LINDSEY and Harry Lindsey, on Behalf of His Minor Child, David Lindsey
v.
COLONIAL LLOYD'S INSURANCE CO., Leanne Roy and State Farm Insurance Co.
Nos. 91-C-1514, 91-C-1517.
Supreme Court of Louisiana.
March 2, 1992.
*607 Edward F. Downing, Gauthier and Murphy, Metairie, for applicants.
Richard A. Deas, Metairie, Earl A. Bridges, Jones, Walker, Waecher, Poitevent, Carrere & Denegre, New Orleans, C. Gordon Johnson, John A. Kopfinger, Jr., Porteous, Hainkel, Johnson & Sarpy, New Orleans, for respondents.
COLE, Justice.
The issue in this tort suit is whether La.R.S. 22:628 (1979), the "Entire Contract Policy Statute," obtains when a named insured, in a contract with a third party, modifies the terms of an insurance policy between the named insured and its insurer. In this case, the question centers around a rental agreement between the named insured and one of its lessees which purportedly limited the lessee's coverage to the statutory minimum amount required by the financial responsibility laws of this state. We must consider whether the named insured's carrier in fact complied, or was even required to comply, with § 628 in order for the rental agreement's limits to be enforceable. Because we do not find the Entire Contract Policy Statute by its terms applies, or was even intended to apply, to this situation, we find the lack of reference in the rental agreement to the policy immaterial. Assuming, arguendo, that La.R.S. 22:628 does apply, it might be interpreted to hold the statute's second method of compliance has been met, i.e., the endorsement to the policy refers to the rental agreement, which rental agreement constitutes evidence of insurance.
Compliance aside, we adopt a test we deem more appropriate for deciding whether an agreement between a policyholder and a third party which changes the policyholder's contract of insurance is enforceable, viz., whether such a contract is against public policy or a specific statute. Applying this test, we find nothing repugnant to public policy or the insurance code in the "two tier" insurance[1] created by the combined policy and rental agreement. Accordingly, we affirm the court of appeal's *608 decision, limiting the insurer's coverage afforded the lessee in accordance with the rental agreement.

I.
The inquiry as to the applicability of La. R.S. 22:628 arises as the result of an episode that occurred on October 5, 1986 in New Orleans, when a car leased from Action Auto Rental, Inc. by LeAnne Roy, and driven by her, struck a car injuring its two occupants, Mrs. Lindsey and her minor son, David Lindsey. The Lindseys sued Mrs. Roy; her insurer, Colonial Lloyd's which provided 10/20 coverage[2]; the plaintiffs' own uninsured motorist carrier, State Farm Mutual Automobile Insurance Co., which also provided 10/20 coverage; and, by amended petition, Action Auto's insurer, Liberty Mutual Insurance Company. The amount of coverage provided by Liberty Mutual is the subject of this appeal.
Liberty Mutual had issued a Business Automobile Insurance Policy, effective as of June 12, 1986, to Action Auto. This policy was transmitted to the policyholder Action Auto. The policy covered the leasing of automobiles by Action Auto in several states, including Louisiana. The pertinent documents in this suit are three: 1) the policy; 2) an endorsement thereto allowing Action Auto to reduce the coverage for lessees via rental agreements; and 3) the rental agreement which limits the coverage for lessees to the statutory minimum required by the financial responsibility laws of Louisiana.
The policy's declaration sheet provides $500,000.00 in coverage to short-term lessees of the insured Action Auto. However, an endorsement to the policy contemplates rental agreements between the insured Action Auto and its customers setting lesser limits. The endorsement states:
"The insurance provided by this policy for the lessee, rentee, its servants, agents, or employees or those using the automobile with or without the permission of the lessee or rentee or persons alleged to be legally responsible for the use of the automobile is subject to the terms, including any limits of liability, conditions, restrictions, and limitations contained in the lease or rental agreement, providing our undertaking under this policy is not enlarged or extended."
The Rental Agreement between Mrs. Roy and Action reads in pertinent part:
"7. ... ACTION also agrees to provide to CUSTOMER and driver, liability coverage with limits of liability equal to the minimum limits required by the financial responsibility laws of the State in which the vehicle is rented.... Said coverage further requires that CUSTOMER and driver shall not aid or abet the assertion of any claim, and shall cooperate with ACTION and its insurer in the investigation and defense of any claim or suit.
* * * * * *
"This paragraph 7 constitutes the entire agreement between ACTION and the CUSTOMER or driver regarding the terms and conditions of the coverages provided by ACTION to the CUSTOMER or the driver and no alteration thereof shall be valid unless agreed to by ACTION in writing. If any provisions of this paragraph shall be found to be unlawful, unenforceable, or contrary to public policy, then that portion of this paragraph which is unlawful, unenforceable, or contrary to public policy shall be modified to provide the minimum amount of coverage necessary to comply with the law or public policy, and the remainder of this paragraph shall remain in full force and effect." (Emphasis added)
The Rental Agreement consists of one page printed front and back, bearing the caption: "Insurance Replacement Rental Agreement." It states, on the front in large type, "Liability and accidental damage protection are provided on this vehicle subject to the terms and conditions contained herein."
*609 After trial on the merits, the judge, finding the accident was caused solely by the negligence of Mrs. Roy, rendered judgment against Liberty Mutual and in favor of David Lindsey for $43,614.50; in favor of Elizabeth Lindsey for $227,000.00; and in favor of State Farm, on its cross claim for reimbursement,[3] for $3,635.00for a total judgment against Liberty Mutual of $274,249.50. The district court held Liberty Mutual's policy provides up to $500,000.00 in coverage to Mrs. Roy because Liberty failed to comply with § 628. The court assumed, rather than decided, that § 628 was applicable to this situation. The court of appeal reversed the finding as to the extent of Liberty Mutual's liability, finding the policy was limited by the terms of the rental agreement.[4] Accordingly, the court of appeal cast each of the three insurers in judgment; that is, State Farm as the plaintiffs' UM carrier, Colonial Lloyd's as Mrs. Roy's liability insurer, and Liberty Mutual as the insurer of Mrs. Roy. Each must pay $10,000.00 to Mrs. Lindsey and another $10,000 to David Lindsey, exhausting the 10/20 policy limits of all three. We granted the Lindseys' and State Farm's applications for writs of certiorari in these consolidated cases to determine whether La.R.S. 22:628 was complied with, or indeed, if it need be complied with in this situation.[5]

II.
To determine whether La. R.S. 22:628 obtains in the context of a policyholder contracting with a third party in a way that modifies the policyholder's insurance contract, it is first necessary to examine the statute and determine its purpose. Section 628 provides:
No agreement in conflict with, modifying, or extending the coverage of any contract of insurance shall be valid unless it is in writing and physically made a part of the policy or other written evidence of insurance, or it [here, the Rental Agreement] is incorporated in the [Liberty Mutual] policy or other written evidence of insurance by specific reference [in the Liberty Mutual policy] to another policy or written evidence of insurance. This Section shall not apply to contracts as provided in Part XV of this Chapter.
The provisions of this Section shall apply where a policy or other written evidence of insurance is coupled by specific reference with another policy or written evidence of insurance in existence as of the effective date hereof or issued thereafter.
Any written agreement in conflict with, modifying, or extending the coverage of any contract of insurance shall be deemed to be physically made a part of a policy or other written evidence of insurance, within the meaning of this section, whenever such written agreement makes reference to such policy or evidence of insurance and is sent to the holder of such policy or evidence of insurance by United States mail, postage prepaid, at such holder's last known address as shown on such policy or evidence of insurance or is personally delivered to such holder.[6]
Section 628 offers three alternative modes of compliance: 1) the first paragraph allows any paper physically attached to the policy to become part of the policy; 2) paragraph one also allows incorporation by reference, that is, a policy of insurance or written evidence of insurance may simply refer to another policy of insurance or written evidence of insurance,[7] incorporating *610 the latter by words alone; and 3) the third paragraph provides that a modifying agreement may be made part of the policy when the agreement "makes reference to such policy" and is mailed or delivered to the policy holder.
The rental agreement was not physically attached to the policy; therefore, the requirements of the first method of incorporation were not satisfied.
To comply with the second method of incorporation, the rental agreement would have to be considered a policy of insurance or "written evidence of insurance." The definition of "insurance" in the Insurance Code is quite broad. "Insurance" is defined as "a contract whereby one undertakes to indemnify another or pay a specified amount upon determinable contingencies." La. R.S. 22:5(1)(a).[8] The rental agreement obligates Action Auto to provide insurance to the lessee in the statutory minimum amounts.
The term "evidence of insurance" is not defined in the Insurance Code. Nonetheless, several aspects of the rental agreement indicate it is intended to supply insurance to the lessee. As noted, the caption on the Rental Agreement reads "Insurance Replacement Rental Agreement." "Replacement" refers to the section of the form allowing lessees to switch rental cars. The form does triple duty, then, acting as the agreement for renting a car, for substituting rental cars, and for providing insurance on rented cars. The caption would perhaps be more understandable if it read:
"Insurance Agreement/Replacement Agreement/Rental Agreement."
Rental agreements of self-insuring car rental agencies have been recognized as automobile liability policies. Hearty v. Harris, 574 So.2d 1234, 1241 (La.1991). Moreover, Quittem v. National Car Rental Systems, 582 So.2d 1337, 1340 (La.App. 4th Cir.1991), recognized car rental agencies which take out policies with insurance companies are likewise in the business of selling insurance. Similarly, in this case, although Action has a policy with Liberty, the rental agreement acts as evidence of insurance. Only the most astute lessee would even realize, based on the following sentence in paragraph 7, that Action has an insurer: "Customer ... shall cooperate with ACTION and its insurer in the investigation and defense of any claim or suit." (Emphasis added.) We conclude, therefore, that Action Auto has, in essence, issued auto liability insurance to its customer. Consequently, even were lessees to be numbered among the class of people § 628 protects, Liberty, arguably, has satisfied the second method of compliance: the Liberty endorsement refers to the rental agreement, which agreement is itself evidence of insurance.
The third method of incorporation would require the rental agreement to make reference to the Liberty Mutual policy. It does not.
In Whittington v. Sowela Technical Institute, 438 So.2d 236 (La.App. 3d Cir.), writs denied, 443 So.2d 591 & 592 (La. 1983), a lower court found a passing reference to the insurance policy sufficient to satisfy paragraph three of § 628. In Whittington, the rental agreement read:
"Customer is covered by an automobile liability insurance policy with limits of liability for bodily injury including death equal to the GREATER OF:

a) The limits of liability under the Customer's personal automobile liability insurance policy ... or
b) The statutory limits prescribed under the Financial Responsibility Law or other applicable statute of the state in which the Vehicle is rented.
PROVIDED HOWEVER that such limits shall not exceed $100,000.00 for each person and $300,000.00 for each accident and property damage of $25,000.00 for each accident. A copy of said policy is available for inspection at the main *611 office of Lessor ..." Id. at 243. (Emphasis added)
The Third Circuit in Whittington did not address the further requirement of the third paragraph of § 628, i.e., that the modification be mailed to or delivered to the policyholder. Rather, the court simply held the above language met § 628.
The Rental Agreement in this case contains a clear declaration on the front: "Liability and accidental damage protection are provided on this vehicle subject to the terms and conditions contained herein." No reference is made to the fact the underlying coverage is provided by the Liberty Mutual policy. Moreover, paragraph three requires the other agreement be delivered to or sent to the policyholder. In this case, the policyholder, Action, already has possession of the rental agreement, making such a requirement absurd. The delivery requirement does, however, reveal the purpose of the statute. The legislature obviously did not intend § 628 to protect third parties inasmuch as the statute refers to informing the policyholder of changes in its coverage. Indeed, informing third parties of changes in the policy is both impractical and unnecessary given third parties do not, and are nowhere required to, have possession of the policy in the first place.

III.
The obvious intent of § 628 is to protect the policyholder from fraud or deception on the part of the insurer. We have held the "Entire Contract Policy Statute" is meant to protect the parties to the insurance contract by assuring that both have in their possession the entire contract. See Guaranty Bank & Trust Co. v. Ideal Mut. Ins. Co., 526 So.2d 1094, 1098 (La. 1988) (holding La. R.S. 22:618, requiring the application be made part of the policy, is meant to "prevent the insurer from defending a claim based upon misstatements by the insured on the application"); Johnson v. Occidental Life Ins. Co., 368 So.2d 1032, 1035 (La.1979) (holding, La. R.S. 22:618 "[t]he salutary purpose of these statutes is that the insured during his lifetime, and the beneficiary after the death of the insured, shall have in their possession at all times the entire evidence of the insurance contract.") W. McKenzie and H. Johnson, 15 Louisiana Civil Law TreatiseInsurance Law & Practice, § 4.
Justice Dennis traced the origins of the Entire Contract Policy Statute in Spain v. Travelers Ins. Co., 332 So.2d 827 (La.1976), concluding "the legislative policy, as expressed in La. R.S. 22:628, and by similar statutes in other jurisdictions, prohibits the insurer from urging as a defense the breach of any condition which is not in some manner physically made a part of the policy. The object of the statute is to assure full notification to the insured of all relevant provisions of his insurance contract." Id. at 833. Couch's insurance treatise bears out this Court's interpretation of the purpose of § 628, analyzing like statutes as follows:
§ 4:14 Persons bound by statute
Statutes providing that insurance policies shall contain the entire contract are binding alike upon all of the parties thereto, but are intended only to govern their relative rights, or the contractual relations between them, and not necessarily the rights of others, such as different persons claiming the insurance, or an officer of the company against whom personal liability is being set up, or an agent of the insurer sued for fraud in misrepresenting the scope of coverage.
Couch on Insurance 2d, § 4:14. It is thus patent to this Court that § 628 does not provide and was not meant to provide protection to third parties, that is, parties other than the actual policyholder. Rather, the section was intended to apply to situations in which the insurer modifies the contract of insurance, hence the requirement that the modifying agreement, such as an endorsement, refer to the policy and be sent to the policyholder.
We also note in passing Liberty Mutual's contention Wannage v. Employer's Ins. of Wausau, 386 So.2d 1076 (La.App. 3d Cir.), writ denied, 393 So.2d 739 (La.1980), applies in this case. This position has merit. In Wannage, the policy defined an "insured" as an executive officer, and an "executive *612 officer" as someone who held an office under the bylaws. Consequently, to determine who executive officers were, it was necessary to refer to the insured company's bylaws which were not physically made a part of the insurance contract. The court held the bylaws did not modify the agreement, therefore, § 628 was not applicable. The court found the bylaws merely filled the interstices of the policy. The same can be said here. It is taken for granted that a policy need not contain the name of every insured. Lessees as a class are insured, though their names can be learned only by reading the rental agreement. Indeed, permittees are also insureds, and their names often are on no written document whatsoever. Similarly, the endorsement at issue here allows the insured, Action Auto, to enter rental agreements which reduce Liberty's exposure. Mrs. Roy's rental agreement lessens Liberty's exposure.[9] The parties' intention is clear: Action and Liberty understood Liberty would provide coverage to Action's lessees in the statutory minimum amounts. Therefore, the policy could justifiably have been reformed to so reflect.

IV.
Because we hold § 628 does not obtain in this situation, it is necessary to determine what limits do exist on a policyholder's freedom to contract with a third party in a way which would modify any coverage afforded to the third party under the named insured's policy. As no Louisiana cases address the issue, a review of cases around the country is helpful in analyzing this question.
The Supreme Court of Ohio has held a lease modifying insurance coverage controlled over the actual policy. In Buckeye Union Ins. Co. v. Shelby Mut. Ins. Co., 12 Ohio St.3d 46, 465 N.E.2d 403 (Ohio 1984), the policyholder leased its tractor to a third party. In the lease, the third party agreed to pay for any damages stemming from its own negligence. The policyholder's insurance contract afforded broader coverage to lessees than the rental agreement did, allowing a lessee to recover even for its own negligence. Nonetheless, the court held the lease controlled, limiting the insurer's exposure even though the insurer was not a party to the lease confected by the insured and a third party.
The Buckeye decision recognizes parties often, in commercial transactions, agree to waive or limit the liability of one side, and expect such agreements to be honored notwithstanding the existence of insurance which may provide greater coverage. In this case, Mrs. Roy signed a rental agreement which obligated Action to provide her with the statutory minimum amount of coverage, the same amount, incidentally, she carried on her own vehicle. As in Buckeye, the parties to the lease themselves agreed upon the extent of coverage. This Court does not find any public policy impaired by honoring the agreement between Mrs. Roy and Action Auto. Indeed, the rental agreement is the law between the parties. La.Civ.Code art. 1983.[10]
Insurance companies have long been held to have the right to restrict their liability to the extent the restrictions do not conflict with public policy and statutory provisions. Hearty v. Harris, 574 So.2d 1234, 1239 (La.1991); Pareti v. Sentry Indem. Co., 536 So.2d 417, 421 (La.1988). An insured, such as Action, faces the same constraints an insurer does, when reducing the amount of coverage provided to a third party to the insurance contract. Accordingly, we conclude the only limits on an agreement between a named insured and a third party are those that apply to all contracts. The contract cannot derogate from "laws enacted for the protection of the *613 public interest." La.Civ.Code art. 7. First among those laws would be the laws in the Insurance Code itself and nothing therein prohibits the "two tier" insurance created by the policy and rental agreement at issue herein.
A survey of cases around the country shows that Louisiana alone has used the device of the Entire Contract Policy Statute to strike down provisions which could simply have been found to be against public policy.[11] If our primary concern is whether the lessee's interest is being protected, it is more appropriate to ask whether public policy is offended than it is to ask whether the rental agreement contains a vague reference to a policy held by the lessor. Indeed, courts will still have to ask, even if § 628 were met, whether public policy or other laws have been contravened in any manner.
Applying the analysis used by other states, this Court could have rested its decision in cases such as Jones v. Breaux, 289 So.2d 110 (La.1974), on public policy grounds rather than on the Entire Contract Policy Statute. In Jones, Justice Barham, writing for the Court, held a provision in a rental agreement canceling coverage if someone under twenty-one were to drive the rented vehicle was unenforceable because the rental agreement was not attached to the policy, attachment being the only method of incorporation prior to the 1977 amendments to § 628. This Court could have held the provision unenforceable on the basis of public policy. The Safety Responsibility Laws of this state require that coverage be afforded to permissive users of vehicles in certain minimal amounts. La. R.S. 32:900.[12]
We hold the proper test for determining the enforceability of a rental agreement between a named insured and a third party, which limits the third party's coverage under the named insured's policy, is to ask whether the provision derogates from public policy or particular statutes in the insurance code or elsewhere. Whether the rental agreement is incorporated into the policy is immaterial.

V.
The coverage provided in the Liberty Mutual policy is sometimes known as "two tier" insurance, that is, one level of coverage is provided to the named insured and a different level to another class of insureds. Some states specifically prohibit two tier coverage by statute. See Smith v. National Indem. Co., 57 Wis.2d 706, 205 N.W.2d *614 365 (1973). California, too, at one time had such a statute prohibiting two tier coverage and, instead, mandating the same amount of coverage for named insureds and all other insureds. Metz v. Universal Underwriters Ins. Co., 10 Cal.3d 45, 109 Cal.Rptr. 698, 513 P.2d 922 (1973). However, as noted in Premier Ins. Co. v. MacDonald, Krieger & Bowyer, Inc., 164 Cal. App.3d 761, 210 Cal.Rptr. 458, 461 (1985), that law was adopted before long-term leasing of automobiles was prevalent. The California legislature "soon recognized that the permissive user insurance requirement would be extremely onerous to business enterprises that involved the ownership and control of large numbers of vehicles and the driving of those vehicles by a wide variety of persons." Id. Accordingly, the legislature amended the insurance code to allow two tier coverage.
In the absence of a statute mandating that the named insured and all other classes of insureds receive the same amount of coverage, this Court has no basis for holding two tier coverage contravenes any public policy, given, as here, the lower level of coverage meets statutory minimum requirements. Furthermore, we do not find the rental agreement's lower limits of coverage unconscionable or otherwise unenforceable.[13] Mrs. Roy agreed to be covered by the statutory minimum amount in the rental agreement. Hence, it would be a windfall, unforeseen and totally outside the contemplation of all the parties, for this Court to find $500,000.00 in coverage for lack of compliance with § 628, a statute meant to protect Action, not Mrs. Roy.

CONCLUSION
In the absence of statutory regulation to the contrary and in consideration of the express agreement by Mrs. Roy to be insured in the amount of the statutory minimum amounts, we find no reason to disregard the unambiguous provisions in Action's rental agreement. Accordingly, the judgment of the court of appeal, finding coverage by Liberty in the amount of $10,000.00 per person and $20,000.00 per accident, is affirmed.
AFFIRMED.
LEMMON, J., concurs.
HALL, J., concurs with reasons.
DENNIS, J., dissents with reasons.
WATSON, J., dissents and assigns reasons.
HALL, Justice, concurring.
I concur in the result reached by the majority opinion, believing that the terms of the lease agreement modifying the limits of liability provided by the Liberty Mutual policy were incorporated into the Liberty Mutual policy by reference in accordance with LSA-R.S. 22:628. I respectfully disagree with the majority conclusion that the "entire contract policy statute" is designed for the protection of the named insured only. The statute is designed to also protect third-party insureds and third-party claimants for whose benefit liability policies are written. LSA-R.S. 22:655 D.; Hughes v. Southeastern Fidelity Ins. Co., 340 So.2d 293 (1976). Insurers should not be able to assert defenses against persons insured under a policy, even though not named insureds, or against injured claimants, unless the provisions upon which the insurer relies are in writing and made a part of the insurance policy physically or by reference.
*615 Here, the terms of the lease agreement stipulating limits of liability equal to the minimum limits required by state law were made a part of the Liberty Mutual policy by reference and form part of Liberty Mutual's insuring agreement. The written agreement modifying coverage [the Rental Agreement] "is incorporated in the [Liberty Mutual] policy by specific reference [in the Liberty Mutual policy] to another policy or written evidence of insurance [the Rental Agreement]." The majority conclusion applying the statutory minimum limits specified in the lease agreement is correct.
WATSON, Justice, dissenting.
The majority errs in reducing the coverage under Action Auto's Liberty Mutual policy from its stated limits of $500,000. LSA-R.S. 22:628 does not allow reduction of those limits by reference to Action's rental agreement. The majority's interpretation of the rental agreement drastically changes the contract of insurance in derogation of R.S. 22:628. See Jones v. Breaux, 289 So.2d 110 (La.1974).
I respectfully dissent.
NOTES
[1] "Two tier" coverage refers to the situation, as here, in which the named insured has a different level of coverage than another class of insureds.
[2] "10/20" coverage means there is $10,000.00 in coverage for each person injured in an accident, with a maximum of $20,000.00 in coverage per accident in which more than one person is injured.
[3] The applications for writs were granted on October 18, 1991, in both the Lindseys' suit and State Farm's cross claim against Liberty Mutual for reimbursement of the amounts it paid its insureds, the Lindseys. The two suits, bearing our docket numbers 91-C-1514 and 91-C-1517, respectively, were consolidated because both hinge on the same issue, whether § 628 applies.
[4] 581 So.2d 408 (La.App. 4th Cir.1991).
[5] 587 So.2d 684 (La.1991).
[6] Acts 1991, No. 1031, § 1, eff. Jan. 1, 1993, reenacts § 628, as 22:3018, with only minor changes. Primarily, § 3018 letters the paragraphs, A-C.
[7] The first paragraph of § 628 was amended in 1977 in response to Spain v. Travelers Ins. Co., 332 So.2d 827 (La.1976). Spain held that an excess policy which referred to a provision in a primary policy did not incorporate that provision because the primary policy was not physically attached to the excess policy. The 1977 revisions make it possible for an excess policy to incorporate the terms of another policy by reference. The revision tracks the situation in Spain.
[8] Acts 1991, No. 1031, § 1, eff. Jan. 1, 1993, expands this definition to include self-insurance.
[9] For a similar case, see Blue Bird Body Co. v. Ryder Truck Rental Inc., 583 F.2d 717, 724 (5th Cir.1978) (applying Mississippi law, the court concluded Liberty Mutual's endorsement incorporated the rental agreement, which reduced coverage for lessees, by reference.)
[10] In Truck Ins. Exchange v. Liberty Mut. Ins. Co., 102 Ill.App.3d 24, 57 Ill.Dec. 503, 428 N.E.2d 1183, 1185 (1981), the court held a lease was incorporated into an insurance policy by mere reference and that the lease, policies, and endorsements must be read together in order to discern the parties' intent.
[11] See Allstate Ins. Co. v. Royal Globe Ins. Co., 195 N.J.Super. 598, 481 A.2d 298 (1984) (provisions in rental agreement, as well as in policy, attempting to restrict coverage to lessee and authorized operators 21 or over held to be unduly restrictive and unenforceable as against public policy); Davis v. M.L.G. Corp., 712 P.2d 985 (Colo.1986) (refusing to enforce rental agreement provision that insurance coverage does not apply while vehicle is being operated by drunk driver, finding such provision unconscionable); and, Williams v. American Home Assurance Co., 121 N.J.Super. 351, 297 A.2d 193 (1972), cert. denied, 62 N.J. 260, 300 A.2d 344 (1973) (wherein the court refused to enforce rental agreement's provision authorizing only certain drivers as insureds because it contravened public policy mandating omnibus coverage, for all permittees.)
[12] La. R.S. 32:900 requires 10/20/10 coverage for permissive users of vehicles. We do not decide here whether 32:900 requiring omnibus coverage is superseded by a later amended statute, La. R.S. 32:1041(B) which provides that lessors need only insure themselves as owners and need not insure their lessees. See Hearty v. Harris, 574 So.2d 1234 (La.1991). Liberty Mutual did not contend the financial responsibility laws do not require Action to provide any insurance to lessees against a lessee's own negligence. Moreover, even had Liberty so argued, the rental agreement is ambiguous in that it requires Action to provide coverage "with limits of liability equal to the minimum limits required by the financial responsibility laws of the State in which the vehicle is rented." (Emphasis added). The rental agreement does not say it provides coverage to the extent Action is required to in accordance with the financial responsibility laws. Rather, the provision refers to the minimum limits of that law which are 10/20/10. Accordingly, Liberty is responsible for 10/20/10 coverage and the question of 32:900's applicability need not be reached.

See American Tours, Inc. v. Liberty Mut. Ins. Co., 315 N.C. 341, 338 S.E.2d 92 (1986), in which the Supreme Court of North Carolina held a rental agency was entitled to enforce its agreement requiring all drivers to be over twenty-one because the policy was a voluntary one, not a policy required to satisfy financial responsibility laws.
[13] In General Accident Group of Ins. Co. v. Liberty Mut. Ins. Co., 191 N.J.Super. 530, 468 A.2d 430 (1983), the court reasoned that "companies in the business of renting motor vehicles to others have less control over and knowledge of the persons using their motor vehicles." Id. 468 A.2d at 433. Therefore, held the court, "We see no reason why such owners cannot insure themselves against liability at higher limits than the limits provided for their lessees and persons using the vehicles with the permission of the lessees, so long as the minimum limits of the law are satisfied." Id. Similarly, the court in Lehman-Eastern Auto Rentals, Inc. v. Brooks, 370 So.2d 14, 16 (Fla.App.3d Cir.1979), on facts similar to those here, held that "the owner and his insurance carrier may contract with the lessee to limit its liability to the statutory minimum coverage." In Lehman-Eastern, the unattached rental agreement limited the coverage.