12FOGG, Judge.
We granted a writ of certiorari in this case on application of the defendant/insurance company to decide whether the trial court erred in failing to grant a motion for summary judgment based on an exclusion in the insurance policy.[1]
FACTUAL AND PROCEDURAL BACKGROUND
This case arises out of an automobile accident occurring on October 4, 1993, when a van driven by Elaine Carrier was hit by a vehicle driven by Willard Stewart. Mr. Stewart had rented the vehicle from Price LeBlanc, Inc., a Toyota dealership. Plaintiffs are: the Succession of Donald Carrier; Elaine Carrier, individually and as adminis-tratrix of the minor children, Luke Carrier and Emily Carrier, and as executrix of the succession of Donald Carrier; April Carrier Hebert; Theresa Carrier Jones; and Donald A. Carrier, Jr. Plaintiffs sought damages for the wrongful death of and loss of consortium relating to the death of Donald Carrier; as well as, for the injuries sustained by Mrs. Carrier and her grandchild, Emily Carrier. Named as defendants are: Willard Stewart; Price LeBlanc, Inc., as the owner of the vehicle involved in the accident; Allstate Insurance Company (hereinafter “Allstate”), as the insurer of the vehicle; S.G. Adams Builders, Inc., the employer of Stewart; Toyota Rent a Car System (hereinafter “TRAC”);[2] and State Farm Insurance Company, the UM insurer of plaintiffs.[3]
Allstate provided two insurance policies in this case. One policy, which was numbered 05009514 (hereinafter “9514”), provided coverage for the renter of the vehicle, Mr. Stewart, and had 10/20/10 limits. The other policy, numbered 05009515 ^(hereinafter “9515”) was issued to the Toyota dealerships serviced by TRAC. The 9515 policy was an excess policy written for the sole protection of the Toyota dealerships named as insureds. The policy is entitled “A Business Excess Liability Policy” and the coverage is described as “limited excess auto liability” with coverage of one million dollars for each accident. The policy states that this coverage is “excess of Allstate Insurance Co. Policy No. 05009514” and that the applicable limits of the underlying policy are the “Minimum Financial Responsibility Limit established by the Financial Responsibility Law or other applicable statute (‘Statutory Limits’) of the state or other jurisdiction in which a covered ‘auto’ is being used.” The named insured is TRAC and through endorsement number one, it also includes “[a]ll participating Toyota Dealerships and Subsidiaries.” The policy under endorsement number three contains an'ex- *369 elusion which states that the policy does not apply “[t]o liability of any rental customer of a rented auto whether or not said rental customer is operating the auto with the permission of a Named Insured.” The insurance policy shows what purports to be a countersignature by the Louisiana licensed resident agent, as well as, the portion of the premium attributable to Louisiana.
The rental agreement which Mr. Stewart signed states on the front that minimum liability is the only insurance provided. According to the back of the rental agreement under paragraph five, entitled “Vehicle Insurance,” the agreement states, “Member provides liability insurance coverage for persons using the vehicle with permission of the Member provided for in Paragraph 1 hereof (and not otherwise) in accordance with the provisions of an automobile liability insurance policy with limits equal to the minimum requirements of any applicable state financial responsibility, law or other similar law or statute.”
. Allstate filed a motion for summary judgment seeking to be dismissed from the suit on the basis of endorsement number three. The plaintiffs contended that the policy exclusion could not be enforced because Allstate violated one of the provisions of the Insurance Code, LSA-R.S. 22:620, which requires that a policy |4issued, delivered, or used in this state be approved by the Department of Insurance under certain circumstances. The trial court denied the motion for summary judgment finding that there were factual issues regarding whether the policy was issued, delivered or used in this state. Allstate moved for a second summary judgment, and in this second motion, it attached the deposition of Kathlee Hennigan, an employee of the Department of Insurance, who testified that Allstate’s policy did not require any approval by the state and, if the form had been submitted, it would not have been considered. The trial court again denied Allstate’s motion for summary judgment, stating:
Having reviewed the arguments and evi-dentiary submissions in the record, this court now finds that the excess policy at issue was in fact delivered for use in the State of Louisiana as evidenced by the signature on the policy of Orrin James Dupuis as Licensed Resident Agent for Louisiana. This Court further finds that the excess policy at issue insures Louisiana risks by inclusion of an omnibus insured clause.
MOTION FOR SUMMARY JUDGMENT
A motion for summary judgment is required by LSA-C.C.P. art. 966(B) to be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by LSA-C.C.P. art. 969; it is favored and shall be construed to accomplish these ends. LSA-C.C.P. art. 966(A)(2).[4] Our appellate review of the trial court action on a motion for summary judgment is de novo, and governed by the same criteria that governs the trial court’s consideration . of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La.1991). The burden of proof on motion for summary judgment remains with the movant. LSA-C.C.P. art. 966; Domingue v. Rodrigue, 96-0567 (LaApp. 1 Cir. 12/20/96); 686 So.2d 132, writ denied, 97-0216 (La.3/14/97); 689 So.2d 1387. The substantive law applicable to a plaintiff’s cause of action determines whether a particular fact in dispute is material. Domingue v. Rodrigue, 686 So.2d at 134.
*370 An insurance policy is a contract under the law and the rules established by our civil code for the interpretation of agreements are applicable. Domingue v. Rodrigue, 686 So.2d at 134; Carney v. American Fire & Indemnity Company, 371 So.2d 815 (La.1979). If the words of an insurance policy are clear and express and free from doubt, the agreement is to be enforced as written. Domingue v. Rodrigue, 686 So.2d at 134; Carney v. American Fire & Indemnity Company, 371 So.2d at 818. However, insurance policy provisions are subject to the mandate or limitations imposed by statutory law or public policy. Block v. Reliance Insurance Company, 433 So.2d 1040 (La.1983). The Allstate policy under consideration herein clearly states that no coverage is extended to the lessee of any covered vehicle and this provision should be applied as written under the rules of contract interpretation unless violative of Louisiana statutory law or public policy.
Contrary to plaintiffs’ contention, Allstate maintains that the policy was not required to be approved under LSA-R.S. 22:620 and that even if the policy were required to be approved, the fact that it was not, does not render the exclusion unenforceable. Also, Allstate asserts that LSA-R.S. 22:1249 applies such that the policy does not have to be approved under LSA-R.S. 22:620.[5] Plaintiffs aver that the exclusion was not enforceable because the policy was not submitted to the Commissioner as required under LSA-R.S. 22:620, which states, in pertinent part:
A. No basic insurance policy form other than surety bond forms, or application form where written application is required and is to be attached to the policy, or be a part of the contract or printed life or |fihealth and accident rider or endorsement form shall be issued, delivered, or used unless it has been filed with and approved by the commissioner of insurance. This Section shall not apply to policies, riders or endorsements designed to delineate the coverage for and used with relation to insurance upon a particular subject; nor which relates to the manner of distribution of benefits or to the reservation of rights and benefits under such policy, and which is used at the request of the individual policyholder, contract holder or certificate holder. Any insurer may insert in its policies any provisions or conditions required by its plan of insurance or method of operation which are not prohibited by the provisions of this Code.
[[Image here]]
E. The commissioner of insurance, may, by order, exempt from the requirements of this Section for so long as he deems proper, any insurance document or form or type thereof as specified in such order, to which in his opinion this Section may not practicably be applied, or the filing and approval of which are, in his opinion, not desirable or necessary for the protection of the public.
Our review of the pertinent jurisprudence leads us to conclude that the failure to comply with LSA-R.S. 22:620 does not result in an automatic invalidation of the policy at issue. In Bennett v. Bruce, 575 So.2d 511 (La.App. 5 Cir.), writ denied, 577 So.2d 36 (La.1991), the plaintiff argued that a UM waiver form had to be submitted to the commissioner for approval under LSA-R.S. 22:620. The court held that even if the form should have been submitted to the commissioner for approval, the failure to do so was not fatal to the document’s validity as it otherwise fully complied with all other provisions of the insurance code under LSA-R.S. 22:653.[6]
Guidroz v. Lewis, 626 So.2d 736 (La.App. 5 Cir.1993), also supports Allstate’s position that the lack of compliance with LSA-R.S. 22:620 does not render the policy or endorsement unenforceable. In Guidroz, the court *371 held that while the insurance commissioner was within his authority to withdraw approval for an insurance policy under LSA-R.S. 22:620, and following such withdrawal the policy could not be issued, bdelivered, or used in this state, the commissioner’s disapproval would be prospective only, and until that time the policy could be used. Further, in Elston v. Shell Oil Company, 376 F.Supp. 968 (E.D.La.1973), affirmed, 495 F.2d 1371 (5 Cir.1974), the court held that even if LSA-R.S. 22:620 required the endorsement at issue therein to be filed, the failure to file it did not render the policy ineffective. The court found that the requirement of filing and approval of the endorsement was designed for the protection of the policyholders,' to benefit Louisiana policyholders by the elimination of prohibited clauses. The court went on to state that approval by the insurance commissioner constitutes an administrative ruling that the policy and its endorsements conform to the requirements of the law, but a failure of the company to file a form and obtain its approval should not destroy the terms of a contract of insurance. The court pointed out that both the insurer and the named insured desired and intended that the restrictive endorsement be attached to the policy and that it was the intent of the parties long before the accident in question that the insurer would not be liable under the terms of the policy which limited the coverage available for personal injuries arising out an accident such as occurred. The court then stated, “We do not think that the mere neglect of some clerk, employed by the insurer or by the insurance broker, in failing to file this endorsement with the insurance commissioner bars the insured or insurer from excluding this type of coverage from its policy.”
We agree with the reasoning of Guidroz and Elston. Thus, we conclude the failure of Allstate to submit the policy, at question herein, to the commissioner of insurance for approval under LSA-R.S. 22:620, if required under the provisions of that statute, did not render the policy invalid. Next we examine whether the policy is otherwise violative of public policy. Allstate relies on the cases of Lindsey v. Colonial Lloyd’s Ins. Co., 595 So.2d 606 (La.1992), Pitts v. Pickens, 94-1811 (La.App. 1 Cir. 5/5/95); 655 So.2d 520, writ denied, 95-1895 (La.11/13/95); 662 So.2d 469, and Dennison v. Liberty Mutual Ins. Co., 94-0026 (La.App. 1 Cir. 11/10/94); 645 So.2d 1227, in support of its contention that the exclusion was not against public policy.
In Pitts, accident victims brought suit against a rental car lessee and the rental car lessor’s insurer seeking damages for injuries sustained in an automobile accident with the lessee. The trial court entered a partial summary judgment in favor of the rental car lessor’s insurer, finding it was not required to provide primary coverage to the lessee above the minimum limits provided by Louisiana law. This court affirmed the partial summary judgment, finding the car lessee who agreed in the rental agreement to be covered under the lessor’s business automobile insurance policy in an amount up to the minimum limit required by the financial responsibility laws was not entitled to coverage in excess of those amounts under the car rental agency’s policy. The lessor was the named insured, and its policy insured a fleet of automobiles owned by the lessor with policy limits of one million dollars. The lessee entered into a rental agreement, in which it was stated that insurance was provided up to the minimum limits required by the financial responsibility laws. The plaintiffs therein contended that the rental agreement was not properly incorporated into the insurance policy as required by LSA-R.S. 22:628 and therefore, the 10/20/10 policy limits set forth in the rental agreement were inapplicable to the plaintiffs claims against the lessee and the insurer. The provisions of LSA-R.S. 22:628 state that no agreement in conflict with or modifying the coverage of any contract of insurance is valid unless it is in writing and physically made a part of the policy or other written evidence of insurance, or it is incorporated in the policy or other written evidence of insurance by specific reference to another policy or written evidence of insurance. The court in the Pitts ease further stated, “Because the lessee agreed to be covered by the statutory minimum amount in the rental agreement, it would be a ‘windfall, unforeseen and totally outside the contemplation of all the parties’ for the court *372 to find one million dollars in coverage for lack of ^compliance with La. R.S. 22:628, a statute meant to protect the rental agency, not the [driver].” The Pitts court concluded by stating that “[I]n the absence of a statute mandating that the named insured and all other classes of insureds receive the same amount of coverage, this court has no basis for holding two-tier coverage contravenes any public policy, given, ... the lower level of coverage meets statutory minimum requirements. Furthermore, we do not find the rental agreement’s lower limits of coverage unconscionable or otherwise unenforceable.”
The court in Pitts relied on the Lindsey case, wherein the Louisiana Supreme Court considered the enforcement of “two-tier” insurance coverage under the liability policy of an automobile rental agency. The court in Lindsey explained that two-tier coverage occurs when one level of coverage is provided to the named insured and a different level to another class of insureds. The court explained that some states specifically prohibit two-tier coverage by statute. The court pointed out that one of these states, California, adopted its law before long term leasing of automobiles was prevalent and that the legislature amended the insurance code to allow two-tier coverage when it recognized that the permissive user insurance requirement would be extremely onerous to business enterprises that involved the ownership and control of large numbers of vehicles and the driving of those vehicles by a wide variety of persons. In the Lindsey case, the issue was whether LSA-R.S. 22:628 rendered ineffective the provisions of the rental agreement purportedly reducing the insurance policy’s limits of liability. The supreme court noted that the purpose of LSA-R.S. 22:628 is to protect the parties to the insurance contract by assuring that both have in their possession the entire contract. The court held that LSA-R.S. 22:628 does not provide and was not meant to provide protection to third parties, that is, parties other than the actual policyholders. The court in Lindsey considered whether there was any statutory or public policy prohibition for such two-tiered coverage. The court determined there is no statutory or public policy requirement that all classes of insureds under a Impolicy receive the same amount of coverage. Since the lower level of two-tier coverage provided the minimum liability coverage required by statute, there was no public policy argument to invalidate the agreement reached by the parties under the insurance contract and the rental agreement. Therefore, whether the rental agreement was incorporated into the policy was immaterial.
An examination of Dennison is also helpful to this discussion. In that case, the issue was whether a car rental agency, which is not self-insured and which enters into a rental agreement insuring against liability only the renter and any named additional driver, is mandated under the Motor Vehicle Safety Responsibility Law to provide omnibus coverage, insuring other persons using the vehicle with the express or implied permission of the renter. This court found the insurer was not required to provide omnibus coverage under LSA-R.S. 32:1041(B) and that any liability coverage extended to the lessee by the rental agreement would be in the nature of a voluntary “automobile liability policy,” such that the provisions of LSA-R.S. 32:900(B)(2), requiring omnibus coverage in a “motor vehicle liability policy,” do not extend to coverage offered by an automobile lessor to its lessee, and thus, the insurance policy could be contractually limited through the lease agreement between the named insured (i.e. the policyholder) and the lessee. The court further found that provisions of the lease agreement limiting liability coverage to the lessee and other named additional drivers did not violate public policy, based on Hearty v. Harris, 574 So.2d 1234 (La.1991), where the supreme court held that it was not against public policy for a self-insured automobile rental agency to restrict liability coverage to certain named drivers.
We further note the Third Circuit case, Breaux v. Claudel, 93-1580 (La.App. 3 Cir. 6/1/94); 640 So.2d 744, which involved excess liability coverage similar to that herein. In Breaux, the issue was whether an Allstate policy with Ford Motor Company as the insured provided coverage for a driver who leased from a | ndealership a vehicle which was subsequently involved in an accident. *373 The driver was required to carry 100/300/300 in liability insurance, but he had only 10/20/10. The Allstate policy had an endorsement that, with respect to a covered auto, stated the insurance under the policy applied to the named insured only and that the insurance would be excess insurance over any other valid and collectible insurance. The endorsement also stated that no insurance was afforded to a lessee or those using the auto with or without the permission of the lessee or persons alleged to be legally responsible for the use of the auto unless provided by statute. The court initially noted that the financial responsibility laws applied to motor vehicle policies, which were defined as an owner’s or operator’s policy of liability insurance certified as provided in LSA-R.S. 32:861 or 899 as proof of financial responsibility. The court stated that the jurisprudence distinguished between a statutory motor vehicle liability policy and a voluntary automobile liability policy. Only statutoiy motor vehicle liability policies are affected by LSA-R.S. 32:861 and 32:900. The court found that the Allstate policy was not a statutory motor vehicle liability policy, unlike the driver’s 10/20/10 policy and therefore was not subject to the same statutory requirements. The court acknowledged that the purpose of the compulsory motor vehicle liability security provisions is to provide compensation for injured persons injured by the operation of an insured vehicle, and not to protect the owner or operator against liability. The court acknowledged that principle, but also noted that the limits required by the compulsory law are 10/20/10 and until the legislature makes a change, it is the law of this state that no motorist has an expectation of more than that amount of coverage on any car which may strike and injure him.
We find unpersuasive plaintiffs’ citation of Jones v. Breaux, 289 So.2d 110 (La.1974), Stanfel v. Shelton, 563 So.2d 410 (La.App. 1 Cir.1990), and Rudison v. Richard, 526 So.2d 369 (La.App. 4 Cir.1988), in support of their argument that omnibus clause protections su-percede rental agreement exclusions. We i2note at the outset that Jones and its progeny have been criticized by more recent supreme court eases. The Lindsey court discussed Jones, and stated that the case could have been decided on other grounds, noting that the safety responsibility laws of the state require coverage be afforded to permissive users of vehicles only in certain minimal amounts. See LSA-R.S. 32:900. The Jones court further stated, without deciding whether LSA-R.S. 32:900 was superceded thereby, that LSA-R.S. 32:1041(B) provides that lessors need only insure themselves as owners and need not insure their lessees. The Jones case was also criticized by the supreme court in Hearty, wherein the court questioned the continued viability of the Jones reasoning in light of recent changes in the statutory law. Finally, the most striking distinction between the instant case and the authorities cited by plaintiffs is, unlike the case at bar, the objectionable circumstance presented to the court in those cases was the lack of availability of 10/20/10 coverage from a primary insurer. In this case, Allstate provided the mandatory coverage required by law to plaintiffs through its 9514 policy. Therefore, we conclude the Allstate 9515 policy, excluding coverage excess of the minimum mandatory liability coverage, does not contravene public policy.
Accordingly, we reverse the judgment of the trial court denying the motion for summary judgment filed by Allstate Insurance Company, and render judgment in favor of relator, granting the motion for summary judgment and dismissing Allstate Insurance Company with prejudice. All costs of these proceedings are assessed to plaintiffs, the Succession of Donald Carrier, Elaine Carrier, individually and as administratrix of the minor children, Luke and Emily Carrier, and as executrix of the succession of Donald Carrier, April Carrier Hebert, Theresa Carrier Jones, and Donald A Carrier, Jr.
REVERSED AND RENDERED.

. The defendant/insurance company also filed an appeal from the judgment of the trial court, See Succession of Carrier v. Allstate Ins. Co., docket number 96 CA 2607, 702 So.2d 374, also decided this date.

. TRAC was developed to assist Toyota dealerships in developing their car leasing business.

.It should be noted that under Allstate's policy number 05009514 with 10/20/10 limits, plaintiffs were paid and they released Allstate as primary insurer under that policy, reserving rights against Allstate under all other policies. Plaintiffs also released Price LeBlanc, TRAC, and Mr. Stewart, except in any capacity necessary for plaintiffs to pursue and protect their claims against his employer and its insurance carrier.

. Although, LSA-C.C.P. art. 966 was amended in 1996 to include this provision, the amendment has been held to he procedural in nature, and therefore, retroactive. Henderson v. Maloid, 96-0285 (La.App. 1 Cir. 11/8/96); 683 So.2d 342, writ denied, 96-2901 (La. 1/24/97); 686 So.2d 866. Previously, summary judgments were not favored, and all doubt concerning a dispute as to a material issue of fact was resolved against granting the motion for summary judgment and in .favor of a trial on the merits. Henderson, 683 So.2d at 343-344. This article has been further amended by 1997 La. Acts, No. 483.

. We find it unnecessaiy to address this contention as we decide the matter on other grounds.

. LSA-R.S. 22:653 states:
Any insurance policy, rider, or endorsement hereafter issued and otherwise valid, which contains any condition or provision not in compliance with the requirements of this Code, shall not be rendered invalid thereby, but shall be construed and applied in accordance with such conditions and provisions as would have applied had such policy, rider or endorsement been in full compliance with this Code.