b DREW, J.
Samuel Mack Thurman (“Samuel”)[1] is the father of Samuel Steve Thurman (“Sammye”). Beginning in 1995, Sammye raised chickens for ConAgra Poultry Company in chicken houses that were located on his father’s property in Lillie, Louisiana. Sammye apparently leased these houses from his father. Samuel and Sam-mye had each purchased Farmer’s Comprehensive Personal Liability insurance from Louisiana Farm Bureau Casualty Insurance Company (“Farm Bureau”). Samuel’s policy was numbered CP829184. Sammye’s policy was numbered CP846636 and provided coverage for Sammye’s property located in Bernice, Louisiana, not his poultry operations located on his father’s property.
Elmer Watts was employed by J & C Poultry, Inc. to supervise the collecting of chickens by migrant workers. Watts alleged that he was injured when a fan located in one of the chicken houses fell against him. On October 16, 2000, Watts and his wife filed suit against Samuel and his wife, Mary Thurman. In their answer, the Thurmans filed a third-party demand against J & C Poultry and ConAgra Poultry. The Wattses later amended their petition to add Sammye and Farm Bureau as defendants. The amended petition alleged that Farm Bureau was liable under the *1015 terms of Samuel’s policy that provided coverage to him and/or his son.
Farm Bureau filed a motion for summary judgment in which it urged that it did not afford coverage to Sammye for the injuries sustained by Elmer Watts. Samuel and his wife filed a motion for summary judgment against the Wattses. They asserted that they were not liable for the alleged | ¡¡injuries because they did not own the fan in question and they did not have custody of the chicken house at the time of the accident.
The trial court ruled on the motions for summary judgment on February 14, 2003. The motion for summary judgment filed by Samuel and his wife was denied. The motion for summary judgment filed by Farm Bureau was granted, with the court finding that the General Liability Policy was the insuring agreement and the accident did not occur on insured premises. A judgment rendered the next month stated that Farm Bureau was dismissed as a defendant regarding the insurance policy issued to Samuel. Mr. and Mrs. Watts then appealed.
Recognizing that Farm Bureau remained as a party as Sammye’s liability insurer, this court ordered the parties to show cause why the appeal should not be dismissed as an unappealable partial judgment. This court also noted that it was unclear from the judgment if Farm Bureau was dismissed as Samuel’s insurer regarding his liability or the liability of his son. In a joint motion to maintain appeal, the parties argued that Farm Bureau had been dismissed as to coverage afforded to Sammye under either policy. Dismissing the appeal, this court noted that despite the assertion to the contrary in the joint motion, the judgment only dismissed Farm Bureau as a defendant regarding coverage provided under Samuel’s policy.
The parties next filed a joint motion in the trial court to amend, clarify, and certify the judgment. An amended and clarified judgment was rendered on December 5, 2003.- The judgment now stated that Farm Bureau was dismissed as to any insurance coverage on behalf of Sammye under any |3Farm Bureau policy. The judgment was also certified as a partial final judgment under ' La. C.C.P. art. 1915(B)(1). The Wattses again appealed.
DISCUSSION
The solitary issue raised by appellants before this court is whether the exclusions and definitions for policies CP829184 and CP846636 are set forth in a Farm Bureau General Liability Policy booklet.[2] Plaintiffs contend the General Liability Policy booklet does not limit the policies’ coverage because there is not a link between the policies’ declarations sheets and the booklet in compliance with La. R.S. 22:628. In granting Farm Bureau’s motion for summary judgment, the trial court found there was no genuine issue of material fact that the General Liability Policy is the insuring agreement. The trial court emphasized the existence of a certification placed upon the declarations sheets by Farm Bureau, as well as the numerous references to “declarations” that were made in the General Liability Policy booklet.
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, and the procedure is favored and shall be construed to accomplish these ends. La. *1016 C.C.P. art. 966(A)(2). Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. |4966(B). Facts are “material” if they potentially insure or preclude recovery, affect the litigants’ ultimate success, or determine the outcome of a legal dispute. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512 (La.7/5/94), 639 So.2d 730.
Appellate courts review summary judgments de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. NAB Natural Resources, L.L.C. v. Willamette Industries, Inc., 28,-555 (La.App.2d Cir.8/21/96), 679 So.2d 477.
La. R.S. 22:628, also known as the “Entire Policy Contract Statute,” provides:
No agreement in conflict with, modifying, or extending the coverage of any contract of insurance shall be valid unless it is in writing and physically made a part of the policy or other written evidence of insurance, or it is incorporated in the policy or other written evidence of insurance by specific reference to another policy or written evidence of insurance. This Section shall not apply to contracts as provided in Part XV of this Chapter.
The provisions of this Section shall apply where a policy or other written evidence of insurance is coupled by specific reference with another policy or written evidence of insurance in existence as of the effective date hereof or issued thereafter.
Any written agreement in conflict with, modifying, or extending the coverage of any contract of insurance shall be deemed to be physically made a part of a policy or other written evidence of insurance, within the meaning of this section, whenever such written agreement makes reference to such policy or evidence of insurance and is sent to the holder of such policy or evidence of insurance by United States mail, postage prepaid, at such holder’s last known address as shown on such policy or evidence of insurance or is personally delivered to such holder.
In order to address the application of this statute as sought by appellants, it is helpful to examine the supreme court’s decision in Lindsey v. Colonial Lloyd’s Ins. Co., 595 So.2d 606 (La.1992). In that case, Liberty Mutual issued a Business Automobile Insurance Policy to Action Auto Rental, Inc. The policy provided $500,000 in coverage to Action Auto’s short-term lessees. An endorsement to the policy provided that coverage was subject to any limits of liability in rental agreements. When LeAnne Roy rented a car from Action Auto, the rental agreement stated that Action Auto provided liability coverage for the customer and driver with liability limits equal to the minimum limits required by Louisiana’s financial responsibility laws. The rental car driven by Mrs. Roy subsequently struck a vehicle in which Mrs. Lindsey and her son were riding, injuring the Lindseys, and a lawsuit was brought.
At issue in Lindsey was whether the much lower liability coverage limits set forth in the rental agreement were rendered ineffective because of Liberty Mutual’s alleged failure to comply with La. R.S. 22:628. The supreme court dismissed this argument, finding that because the Entire Contract Policy Statute was not intended to apply to the situation, “... the lack of reference in the rental agreement to the policy [was] immaterial.” Id., 595 So.2d at 607.
*1017 Discussing the intent and purpose of La. R.S. 22:628, the supreme court stated:
... The legislature obviously did not intend § 628 to protect third parties inasmuch as the statute refers to informing the policyholder of changes in its coverage. Indeed, informing third parties of changes in the policy is both impractical and unnecessary given third parties do not, and are nowhere required to, have possession of the policy in the first place.
* * *
1 sThe obvious intent of § 628 is to protect the policyholder from fraud or deception on the part of the insurer. We have held the “Entire Contract Policy Statute” is meant to protect the parties to the insurance contract by assuring that both have in their possession the entire contract.
* * *
... It is thus patent to this Court that § 628 does not provide and was not meant to provide protection to third parties, that is, parties other than the actual policyholder. Rather, the section was intended to apply to situations in which the insurer modifies the contract of insurance, hence the requirement that the modifying agreement, such as an endorsement, refer to the policy and be sent to the policyholder.
Id, 595 So.2d at 611. (Emphasis added.)
Therefore, .it is clear that the Wattses cannot depend on Farm Bureau’s alleged non-compliance with La. R.S. 22:628 as their basis to defeat Farm Bureau’s motion for summary judgment. This is an argument reserved for the insureds in this case.[3] Accordingly, we affirm the judgment dismissing Farm Bureau as a defendant as to any insurance coverage on behalf of Sammye under either policy CP829184 or CP846636 for the accident at issue.
DECREE
At appellants’ costs, the judgment is AFFIRMED.

. "Samuel” is sometimes spelled "Samual” in the record, including the caption for the original petition.

. Robert Riche, a product manager for Farm Bureau, testified that Farm Bureau does not offer a specific Farmer’s Comprehensive Personal Liability Policy. Instead, Farm Bureau offers a General Liability Policy, and the booklet for that policy applies to personal liability, farm liability, and commercial liability coverages.

. A review of the record does not show any opposition filed by Samuel Mack Thurman or Samuel Steve Thurman to Farm Bureau's motion for summary judgment, nor did either Thurman appeal the judgment.