**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

Nos. 00-31207 and 01-30722
_____

HENRY THURMON,

Plaintiff-Appellee,

versus

PROVIDENT AMERICAN INSURANCE CO.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Louisiana
(No. 99-CV-1045)
April 4, 2002

_____

Before POLITZ, STEWART and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Provident American Insurance Company ("Provident") appeals from the judgments of the district court awarding Henry Thurmon the amount of his remaining unpaid medical claims as well as penalties and attorney's fees pursuant to La. Rev. Stat. § 22:657. For the following reasons, we affirm.

## I. FACTS AND PROCEEDINGS

From January 28, 1993 until March 28, 1999, Thurmon was

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

insured under a major medical expense policy issued by Provident (the "policy"). The policy contains a provision that limits benefits under the policy when an insured qualifies for Medicare (the "Medicare provision"). A similar endorsement that purports to allow for a reduction of benefits to the extent of an insured's Medicare eligibility was allegedly added to the policy effective July 1, 1997 (the "Medicare endorsement"). The policy is also subject to an endorsement that excludes coverage for diseases or disorders involving the cardiovascular system (the "cardiovascular endorsement").

In May 1998, Thurmon was diagnosed with renal failure. From that time until March 1999, Thurmon received medical treatment from medical providers who submitted invoices and medical claim forms to Provident. Some of the initial claim forms listed diagnoses that suggested that the claims were excluded under the cardiovascular endorsement, while several others indicated diagnoses that suggested that the cardiovascular endorsement was inapplicable.

Without obtaining additional medical records or consulting medical personnel, Provident initially denied payment on all claims received between June 10, 1998 and October 22, 1998 on the ground that the cardiovascular endorsement barred coverage. However, it re-opened the case after receiving a December 23, 1998 letter from one of Thurmon's service providers requesting that Provident review its denial of Thurmon's claims. By letters dated January 18 and February 4, 1999, Provident requested that Thurmon execute a

2

medical authorization form to allow Provident to obtain additional medical records from Thurmon's providers.  Provident received the authorization form from Thurmon on February 18.  Thereafter, Provident reviewed Thurmon's claims and, on March 31, informed him that the claims would be considered for payment.  In May 1999, Provident paid some of the claims (approximately $2500, representing claims received from October 1998 to February 1999).

Seeking to determine the applicability of the Medicare endorsement, Provident also requested that Thurmon provide it with information regarding his Medicare eligibility by letters dated January 18, February 4, February 18, and March 31.  Thurmon provided the requested information on July 27.

Provident acknowledged its responsibility for the claims by a letter dated July 8, but did not actually pay the claims until mid-October (approximately $23,000, primarily representing claims received from June 1998 to December 1998).  Provident attributes this delay to staffing shortages related to the company's Year 2000 preparations.  Provident also paid another claim in the days before trial in February 2000 ($6200, representing a claim received in July 1998).

In all the payments it made, Provident applied the Medicare endorsement to reduce Thurmon's benefits to the extent of his Medicare eligibility. After all the foregoing payments, the claims that remained unpaid totaled $23,386.13, which includes the amounts by which Provident reduced Thurmon's benefits pursuant to the

3

Medicare endorsement.

Thurmon filed suit against Provident on May 5, 1999, seeking payment of the remaining unpaid claims as well as penalties and attorney's fees pursuant to La. Rev. Stat. § 22:657 for Provident's alleged unreasonable delay in paying all the claims. After a bench trial, the district court found that (1) Provident was liable for the remaining unpaid claims because it impermissibly reduced Thurmon's benefits on account of his Medicare eligibility, and (2) Provident was liable for penalties and attorney's fees under § 22:657 because it unreasonably delayed payment of Thurmon's claims. Accordingly, it entered judgment in Thurmon's favor in the amount of $80,937.88, representing $23,386.13 in unpaid claims and $57,551.75 in penalties, plus interest and costs. By separate judgment, the district court awarded Thurmon $31,000 in attorney's fees. Provident now appeals from both judgments.[1]

## II. STANDARD OF REVIEW

The standard of review for a bench trial is well established: findings of fact are analyzed for clear error, and legal conclusions are reviewed de novo. Gebreyesus v. F.C. Schaffer & Assocs., 204 F.3d 639, 642 (5th Cir. 2000). Whether just and reasonable grounds exist for an insurer's failure to pay a claim

---

[1] Provident does not contest the reasonableness of the amount of the fee award. Instead, it requests only that the award of attorney's fees be vacated if this court reverses, in part or in full, the district court's ruling on the § 22:657 claim.

4

timely is a question of fact to be decided upon the facts and circumstances of a particular case.  <u>Nolan v. Golden Rule Ins. Co.</u>, 171 F.3d 990, 993 (5th Cir. 1999); <u>Holland v. Golden Rule Ins. Co.</u>, 688 So. 2d 1186, 1189 (La. Ct. App. 1996).

### III.  REDUCTION OF BENEFITS DUE TO THURMON'S MEDICARE ELIGIBILITY

We first consider whether the district court properly awarded Thurmon the amount by which Provident reduced his benefits on account of his Medicare eligibility.  The district court found that both the Medicare provision and the subsequent Medicare endorsement on which Provident had relied to reduce Thurmon's benefits were invalid, and thus that Provident was without authority to reduce the amount of Thurmon's benefits because of his Medicare eligibility.

### A.  Validity of the Medicare Endorsement

At trial, Provident introduced a copy of an endorsement that authorizes Provident to reduce benefits to the extent of an insured's Medicare eligibility.  The endorsement recites that it is "made part of the Policy to which it is attached" and indicates that it revises Policy Form MMB-LA 9/92, the form of Thurmon's policy.  Provident contends that the endorsement was validly added to Thurmon's policy effective July 1, 1997.

A change or addition to an insurance policy is valid only if it complies with the terms of the policy and with Louisiana law. The "Entire Contract Changes" clause of Thurmon's policy provides

5

that alterations or additions to the policy must be "approved by [Provident's] executive officer and endorsed or attached to this Policy" to be valid. Further, La. Rev. Stat. § 22:628 provides that no modification of an insurance policy is valid unless "it is in writing and physically made a part of the policy . . . or it is incorporated in the policy . . . by specific reference to another policy or written evidence of insurance." A written modification is deemed to be physically made a part of a policy "whenever such written agreement makes reference to such policy . . . and is sent to the holder of such policy . . . by United States mail, postage prepaid, at such holder's last known address as shown on such policy . . . or is personally delivered to such holder." Id. La. Rev. Stat. § 22:628 embodies the policy that the parties to an insurance contract should have the entire contract in their possession. Lindsey v. Colonial Lloyd's Ins. Co., 595 So. 2d 606, 611 (La. 1992). An insurer bears the burden of showing that an endorsement was validly made a part of the policy. See Brown v. Permanent Gen. Ins. Co., 783 So. 2d 467, 471 (La. Ct. App.), writ denied, 793 So. 2d 196 (La. 2001).

We agree with the district court that Provident has failed to show that the Medicare endorsement was validly added to the policy. The record is devoid of evidence that indicates that Provident ever sent or delivered the endorsement to Thurmon, as Provident admits § 22:628 requires. Accordingly, on this record, the Medicare

6

endorsement cannot be said to have been validly added to Thurmon's policy.

## B. Validity of the Medicare Provision

Provident contends that even if the Medicare endorsement is invalid, the reduction of Thurmon's benefits was authorized by the Medicare provision. Although it admits that the Medicare provision was unenforceable at the time the policy was issued by virtue of La. Rev. Stat. § 22:213(D) (repealed 1995), which precluded an insurer from considering the benefits payable by government plans such as Medicare when determining benefits under the policy, Provident contends that the provision became enforceable after the repeal of § 22:213(D) in 1995 and thus was effective at the time of Thurmon's claims.

Pursuant to the policy's "Conformity with State Statutes" clause, "[a]ny provision of this Policy which, on the Policy Date, is in conflict with the statutes of [Louisiana] is hereby amended to conform to the minimum requirements of such statutes." The policy schedule reveals that the "Policy Date" is January 28, 1993. It is not disputed that on January 28, 1993, the Medicare provision conflicted with Louisiana law and thus was amended out of the policy. Provident has not pointed to, nor have we found, any provision in the policy by which the stricken Medicare provision would be revived after the repeal of the conflicting statute. In these circumstances, it appears that the Medicare provision was not a valid part of the policy at the time of Thurmon's claims.

7

Nevertheless, Provident argues that the policy was renewed subsequent to the repeal of § 22:213(D) in 1995 and that the Medicare provision was thereafter a valid part of the policy. As an initial matter, we observe the "Conformity with State Statutes" clause specifies that the relevant date for determining whether a policy provision conflicts with state law is the "Policy Date," which the record shows to be January 28, 1993. Further, we observe that there is no evidentiary basis to conclude that there was a post-1995 renewal. Although the record is clear that the policy remained in effect until March 1999, Provident has not provided any direct or indirect evidence of the policy's renewal after 1995.

On this record, we must conclude that the Medicare provision was not effective at the time of Thurmon's claims. We therefore affirm the district court's award of the amounts by which Provident reduced Thurmon's benefits.

## IV. PENALTIES AND ATTORNEY'S FEES PURSUANT TO LA. REV. STAT. § 22:657

We now turn to the question whether the district court erred in awarding Thurmon penalties and attorney's fees pursuant to La. Rev. Stat. § 22:657. That statute provides that an insurer must pay claims made under a health and accident insurance policy within 30 days of their receipt. If the insurer fails to comply without "just and reasonable grounds," it will be subject to a penalty of double the amount of benefits due plus attorney's fees. "The statutory scheme is apparent; insurers are discouraged from lightly

8

denying coverage." <u>Boudreaux v. Fireman's Fund Ins. Co.</u>, 654 F.2d 447, 451 (5th Cir. Unit A Aug. 1981).

In this case, Provident asserts that its delay in paying Thurmon's claims was reasonable under the circumstances, offering three explanations for its delay. First, it submits that its denial of the initial claims was justified based on its belief that the cardiovascular endorsement barred coverage. Second, Provident attributes its further delay to Thurmon's failure to provide information regarding his Medicare eligibility until July 1999. Finally, Provident blames its failure to pay the claims for nearly three months — from July 1999, at which time it admittedly had all the information it allegedly needed, until October 1999 — on staffing problems caused by Year 2000 preparations.

The district court found that none of Provident's proffered explanations justified its delay in paying Thurmon's claims, and we discern no clear error in this finding. Given the inconsistencies and apparent conflicts on the initial claim forms, the district court had a reasonable basis to conclude that Provident had a duty to investigate Thurmon's claims further before denying them and that its failure to do so was unreasonable: "The indication that the patient's illness might be related in part to an excluded condition does not automatically exclude coverage for the entire illness and hospitalization." <u>Broussard v. National Am. Life Ins. Co.</u>, 302 So. 2d 627, 630 (La. Ct. App. 1974). Provident's second reason for its delay — that Thurmon did not provide his Medicare

9

eligibility information until July — is moot in light of our determination that both the Medicare provision and the Medicare endorsement are invalid, for "[a]n insurer must take the risk of misinterpreting its policy provisions.  If it errs in interpreting its own insurance contract, such error will not be considered as a reasonable ground for delaying the payment of benefits, and it will not relieve the insurer of the payment of penalties and attorney's fees."  <u>Carney v. American Fire & Indem. Co.</u>, 371 So. 2d 815, 819 (La. 1979); <u>Sanders v. Home Indem. Ins. Co.</u>, 594 So. 2d 1345, 1350 (La. Ct. App. 1992).  Finally, the district court did not err in rejecting Provident's explanation that its efforts to achieve Year 2000 compliance was a reasonable basis for its delay.  That Provident chose to shirk its responsibilities under § 22:657 by diverting its work force from processing claims to prepare for the Year 2000 transition, a foreseeable circumstance that could have been handled without diverting claims personnel, does not justify its delay.

V.   CONCLUSION

For the foregoing reasons, the judgments of the district court are AFFIRMED.

10